UNITED STATES of America, Appellee,

v.

Michael S. BEGNAUD, Appellant.

No. 85–1578.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1986.

Decided Feb. 10, 1986.

Rehearing Denied March 6, 1986.

Charles Atwell, Kansas City, Mo., for appellant.

Cynthia Clark Campbell, Asst. U.S. Atty., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

LAY, Chief Judge.

Michael Begnaud was convicted on nine counts of wire fraud for allegedly obtaining almost $8 million from various federal agencies and credit unions through fraudulent means and converting the money to his own use. Begnaud appeals on the ground that the district court's [1] instructions to the jury did not correspond to the charges alleged in the indictment. Begnaud asserts that the jury may have convicted him on charges not set forth in the indictment, thus violating his constitutional rights. We find that the trial court's instructions, when taken as a whole, were not improper. We affirm the judgment of the district court.

## Background

In November 1984, a grand jury indicted Begnaud on nine counts of wire fraud in violation of 18 U.S.C. § 1343 (1982).[2] The

1. The Honorable Scott O. Wright, Chief Judge of the United States District Court for the Western District of Missouri.

2. Count One of the indictment alleged the following:

COUNT ONE

1. From on or about September 1, 1983, and continuing until on or about March 30, 1984, MICHAEL S. BEGNAUD, defendant herein, in the Western District of Missouri, devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises from the following investors: The U.S. Bureau of Indian Affairs, Department of the Interior; Bergstrom Federal Credit Union, Bergstrom AFB, Austin, Texas 78743; TIC Federal Credit Union, Fort Benning, Georgia 31925; well knowing the said pretenses and representations were false and fraudulent when made:

a. That Account No. 780049, at Mark Twain Bank South, was an authorized bank account for the Oak Park Credit Union, 3906 Indiana, Kansas City, Missouri.

b. That at all times herein, Michael S. Begnaud was acting and did act solely on the behalf of the Oak Park Credit Union with respect to the solicitation and deposit of brokered funds.

2. It was further a part of the scheme and artifice to defraud that the defendant, on January 19, 1984, presented to the Board of Directors of the Oak Park Credit Union a proposal in which he would place $500,000.00 on deposit with the credit union in exchange for a position on the Board of Directors.

3. It was further a part of the scheme and artifice to defraud that the defendant, on January 20, 1984, opened two accounts at Mark Twain South Bank, Kansas City, Missouri, entitled Oak Park Community CU Funding Account with the defendant the only authorized signator on both accounts.

4. It was further a part of the scheme and artifice to defraud that the defendant Michael S. Begnaud was appointed to the Board of Directors at the annual meeting of the Oak Park Credit Union held on January 30, 1984.

5. It was further a part of the scheme and artifice to defraud that the defendant would and did make the false and fraudulent representations contained in Paragraphs (a) and (b) above to induce investors to wire transfer

evidence at trial, the sufficiency of which is not challenged on appeal, established that Begnaud approached the Oak Park Credit Union in late 1983 or early 1984, offering to raise money for the small minority-owned credit union. Begnaud was elected to the board of directors of the Oak Park Credit Union soon thereafter. Then, allegedly representing himself as the authorized representative of the credit union, Begnaud secured deposits through money brokers from the Bureau of Indian Affairs, Bergstrom Federal Credit Union, and T.I.C. Federal Credit Union. Begnaud instructed the brokers to deposit these funds in a bank account he had opened in the name of "Oak Park Community C.U. Funding Account." Begnaud had designated himself as the authorized signatory, director, and secretary of the account and listed as the federal tax identification number of the account the number assigned to the Oak Park Credit Union. Begnaud allegedly used some of the money deposited in this account to make loans, investments, and various personal purchases. In March 1984, after investigating rumors that brokered funds supposedly ordered by the Oak Park Credit Union had not been deposited in the credit union's account, the Missouri State Division of Credit Unions took control of the Oak Park Credit Union and froze Begnaud's accounts.

Begnaud testified at trial that he had never represented himself as an authorized representative of the Oak Park Credit Union in order to receive deposits. Begnaud further testified that he never represented that the account in which the funds were deposited belonged to the Oak Park Credit Union or that the funds would be federally insured.

At the close of all the evidence, the district court instructed the jury on the elements of the crime of wire fraud under Count One as follows:

> The crime of wire fraud as charged in count I of the indictment, has five essential elements which are, one, that the defendant made up a plan or scheme to defraud; two, in furtherance of said plan or scheme to defraud the defendant made certain false pretenses, statements or representations and that at the time he made such false pretenses, statements or representations he knew that they were false; three, that the false pretenses, statements or representations related to something important to the plan; four, that on or about January 26 of 1984, for the purpose of carrying out such plan or scheme, the defendant caused sounds or signals to be transmitted by means of interstate wire which resulted in the transfer of funds belonging to the United States Bureau of Indian Affairs in an amount of $5,267,000 from the United States Treasury Department, Federal Reserve Bank, New York, New York, to the account of Mark Twain Bank South, Kansas City, Missouri, and; five, the defendant acts [sic] with the intention of obtaining money by false

---

brokered funds into the Centerre Bank, Identification No. 101000093, Account No. 020907, which were thereafter transferred to Michael S. Begnaud's account numbered 780049 at the Mark Twain South Bank under the name of Oak Park Community CU Funding Account.

6. It was further a part of the scheme and artifice to defraud that the defendant converted to his own use or the use of others the above named investors' brokered funds in the amount of $7,950,205.60.

7. On or about January 26, 1984, in the Western District of Missouri, Michael S. Begnaud, for the purposes of executing said scheme and artifice to defraud, did wilfully and knowingly cause to be transmitted in interstate commerce by means of a wire communication, certain signs, signals, and sounds which effected a wire transfer of funds in the amount of $5,267,000.00 from the Account No. 021030004 from the U.S. Treasury Department, Federal Reserve Bank, New York City, New York, to Account Number 020907 in the Centerre Bank, Kansas City, Missouri; all in violation of 18 U.S.C. § 1343.

Paragraph one of Counts Two through Nine realleged the allegations contained in paragraphs one through six of Count One. Paragraph two of Counts Two through Nine set forth a specific allegedly fraudulent wire transfer of money.

pretenses, statements or representations.[3]

Begnaud's counsel objected to this instruction on the ground that each count charged in the indictment set forth two specific misrepresentations allegedly made by Begnaud, whereas the jury instructions allowed the jury to convict Begnaud on the basis of any "false pretenses, statements or representations related to something important to the plan." The district court overruled Begnaud's objection and the jury returned a verdict against Begnaud on all nine counts.

**Discussion**

■ The thrust of Begnaud's contention on appeal is that the district court's instructions on the elements of wire fraud constructively amended the indictment and allowed the jury to convict him of charges not alleged in the indictment.[4] Begnaud thus asserts that his conviction violates the principle that a defendant may not be tried on charges not made in the indictment. *See Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960); *United States v. Yeo*, 739 F.2d 385, 387 (8th Cir.1984). We disagree.

In cases in which courts have found a constructive amendment of an indictment by virtue of the trial court's instructions to the jury, the instructions in effect allowed the jury to convict the defendant of an offense different from or in addition to the offenses alleged in the indictment. For example, in *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), the leading case on constructive amendments of indictments, the grand jury indicted Stirone on a charge of obstructing shipments of sand into Pennsylvania by means of extortion in violation of the Hobbs Act. The prosecution, however, also introduced evidence that the defendant had obstructed the export of steel out of Pennsylvania through extortion. The trial court instructed the jury that it could convict Stirone if it found that Stirone had obstructed shipments of sand into Pennsylvania *or* obstructed shipments of steel out of Pennsylvania through extortion. The Supreme Court reversed Stirone's conviction because it concluded that the jury might have convicted Stirone of using extortion to obstruct steel exports out of Pennsylvania, a separate offense not alleged in the indictment. *Stirone*, 361 U.S. at 217–19, 80 S.Ct. at 273–74.

Similarly, in *United States v. Yeo*, 739 F.2d 385 (8th Cir.1984), this court reversed the conviction of a defendant indicted for extortion in the collection of a debt from one Jim Crouch. Because the trial court instructed the jury that it could convict the defendant if it found that the defendant used "extortionate means to collect from Jim Crouch *or another*," this court concluded that the jury may have convicted the defendant of extortion in collecting a debt from someone other than Jim Crouch, a crime different from that for which the defendant was indicted. *Id.* at 386–87 (emphasis added in *Yeo* ).

■ In contrast, Count One of Begnaud's indictment and the district court's instruction to the jury on the elements of Count One charged Begnaud with the same offense: using wire communications to

---

**3.** The jury instructions for the elements of Counts Two through Nine were identical to the jury instructions on Count One except that, for each of those counts, the fourth element specifically referred to the allegedly fraudulent wire transfer that was the subject of that count.

**4.** It is important to note the distinction between an actual or constructive *amendment* of the indictment, which is reversible error per se, and a *variance* between the indictment and proof, which does not require a reversal if the variance is harmless. *See United States v. Yeo*, 739 F.2d 385, 387 (8th Cir.1984). An amendment of the indictment occurs when the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them. *See United States v. Johnson*, 713 F.2d 633, 643 (11th Cir.1983), *cert. denied sub nom. Wilkens v. United States*, 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984). In contrast, a variance occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment. *See id.* at 643 n. 9.

willfully and knowingly effect the transfer of $5,267,000.00 through a scheme or artifice to defraud. The precise misrepresentations allegedly made by Begnaud in furtherance of the fraudulent scheme did not need to be set forth in the jury instructions any more than did every other precise detail of the allegedly fraudulent scheme contained in the indictment, such as the fact that Begnaud opened two bank accounts on January 20, 1984, or the fact that Begnaud was appointed to the board of directors of the Oak Park Credit Union.[5] As this court stated long ago in *Holmes v. United States*, 134 F.2d 125 (8th Cir.), *cert. denied*, 319 U.S. 776, 63 S.Ct. 1434, 87 L.Ed. 1722 (1943):[6]

> It is enough to repeat that the gist of the offense, the use of the mails, was proved, and the scheme to defraud was proved substantially as allegated [sic]. All the allegations relative to false representations need not be proved as a part of the scheme. A scheme to defraud is necessarily made up of numerous elements, no particular one of which need be proved if sufficient is shown to constitute the scheme.

*Id.* at 133; *see also United States v. West*, 549 F.2d 545, 552 (8th Cir.), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1977) (citing *Holmes*); *Baker v. United States*, 115 F.2d 533, 542 (8th Cir.1940), *cert. denied*, 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed.2d 1128 (1941) (same). We therefore conclude that the trial court's instructions to the jury on the elements of wire fraud did not constitute a constructive amendment of the indictment.[7]

We also reject Begnaud's contention that a fatal variance resulted from the fact that the indictment set forth two specific representations Begnaud allegedly made in furtherance of his scheme to defraud whereas the prosecution offered evidence of, and the court's instructions allowed the jury to consider, other misrepresentations allegedly made by Begnaud.[8] A variance between the indictment and proof at trial requires reversal of a conviction only if the variance actually prejudiced the defendant. *West*, 549 F.2d at 552. The primary consideration in this determination is whether the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial. *Id.* (quoting *Mathews v. United States*, 15 F.2d 139, 142–43 (8th Cir.1926)). Clearly, the indictment fully apprised Begnaud of the proof that the prosecution ultimately presented against him at trial. The indictment charged Begnaud with using wire communications in furtherance of a scheme to defraud and to obtain money by false pretenses on nine separate occasions. This was the evidence the prosecution produced at trial. Begnaud's contention that he was only prepared to defend against the two misrepresentations specifically set forth in the indictment is simply without merit. *Cf. United States v. Lewis*, 759 F.2d 1316,

---

**5.** Begnaud's counsel made no objection to the fact that the trial court's instructions did not set out the other details of the fraudulent scheme set forth in the indictment, but objected only to the fact that the instructions did not set forth the two misrepresentations alleged in the indictment.

**6.** Although the defendant in *Holmes* was charged with mail fraud, cases construing the mail fraud statute, 18 U.S.C. § 1341, guide our interpretation of the wire fraud statute. *United States v. Donahue*, 539 F.2d 1131, 1135 (8th Cir.1976).

**7.** If, however, a defendant was indicted on charges of making false statements under oath in violation of 18 U.S.C. § 1001, an unconstitutional constructive amendment would occur if the trial court's instructions would enable the jury to convict the defendant of making misrepresentations under oath other than those specifically set forth in the indictment. *See United States v. Vesaas*, 586 F.2d 101, 102 n. 3 (8th Cir.1978).

**8.** Begnaud concedes that the government presented substantial proof that Begnaud made many misrepresentations relating to the scheme to defraud, such as representing to potential depositors that the credit union had assets of over $6 million, telling the Oak Park Credit Union that he had to be appointed to its board of directors in order to solicit funds on the credit union's behalf, and reporting to the credit union's board of directors only $500,000.00 of the almost $8 million in deposits Begnaud had solicited.

1344 (8th Cir.), *cert. denied sub nom. Milburn v. United States,* —— U.S. ——, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985) (where the indictment fairly specifies the offense charged and notifies the defendant of the particulars, the defendant has knowledge that other overt acts underlying the conspiracy might be pleaded at trial).

## Conclusion

The trial court's instructions to the jury on the elements of wire fraud did not constitute a constructive amendment of the indictment nor did the possible variance between the allegations set forth in the indictment and the proof presented at trial prejudice Begnaud in any way. Accordingly, we affirm Begnaud's conviction on all nine counts of wire fraud.