# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1599

_____

United States of America

*Plaintiff - Appellee*

v.

Brandy Marie Thomas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 13, 2015
Filed: July 2, 2015

_____

Before MURPHY and SHEPHERD, Circuit Judges, and HARPOOL,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

Brandy Thomas was convicted, after a jury trial, of four counts of wire fraud based on a scheme she perpetrated to defraud mortgage lenders by submitting false

_____

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri, sitting by designation.

income information on loan applications. The district court[2] sentenced Thomas to 48 months imprisonment followed by 18 months supervised release and ordered her to pay restitution. Thomas appeals, arguing the district court erred in two of its evidentiary rulings, in the instructions it gave to the jury, in allowing the government to constructively amend the indictment, and in issuing an Allen[3] charge to the jury and polling individual jurors. We affirm.

## I.

A grand jury indicted Brandy Thomas on four counts of wire fraud for allegedly engaging in a scheme to defraud mortgage lenders between June 2006 and December 2006. The government alleged that Thomas defrauded lenders by submitting false income information on loan applications in relation to the purchase of three properties and the refinancing of one property, specifically alleging Thomas overstated her income, provided fictitious rental agreements to support the overstated income amount, and failed to list a mortgage debt on loan documents.

## II.

We first consider whether the district court erred in the instruction it gave the jury regarding the "intent to harm" element of wire fraud. Before submitting the case to the jury, the district court considered proposed jury instructions from both Thomas and the government concerning the "intent to defraud" element of the wire fraud offense. The district court rejected Thomas's proposed instruction and instead used an instruction that closely followed the Eighth Circuit Model Jury Instruction for mail fraud. Thomas asserts that the district court erred in refusing to instruct the jury that

---

[2]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

[3]Allen v. United States, 164 U.S. 492 (1896).

Thomas must have contemplated, at the very least, some actual harm to another in order to convict her of wire fraud. We review a district court's jury instructions for abuse of discretion. Boesing v. Spiess, 540 F.3d 886, 890 (8th Cir. 2008).

Securing a conviction for wire fraud requires the government to prove that: (1) the defendant devised or joined a scheme to defraud, (2) the defendant intended to defraud, (3) it was reasonably foreseeable that interstate wire communications would be used, and (4) wire communications were, in fact, used. 18 U.S.C. § 1343; United States v. Johnson, 450 F.3d 366, 374 (8th Cir. 2006). Regarding the "intent to defraud" element, "the [government] is not required to show actual loss or harm to the victims of the fraud in order to prove wire fraud []. Rather, the government merely needs to show that the accused intended to defraud his victim and that his or her communications were reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Louper-Morris, 672 F.3d 539, 556 (8th Cir. 2012) (internal quotation marks and citations omitted).

Thomas argues that the district court should have relied upon United States v. Jain, 93 F.3d 436 (8th Cir. 1996), in issuing its instruction on the "intent to defraud" element. In Jain, our court reversed a defendant's conviction for mail fraud when the government failed to provide any evidence that the victims suffered tangible harm or to otherwise prove the defendant's fraudulent intent. Id. at 441-42. Thomas asserts that this case requires the government to prove an intent to cause harm, rather than a simple intent to defraud. See id. at 441. But Jain is an honest-services fraud case that is distinct from the wire fraud charges against Thomas. See id. Thus, Jain is inapplicable, despite Thomas's assertions to the contrary. Here, the district court instructed the jury that "[t]o act with intent to defraud means to act knowingly and with the intent to deceive someone for the purpose of bringing about some financial gain to oneself or another to the detriment of another person." R. Doc. 108, at 20. This instruction is in accordance with Eighth Circuit law. See Louper-Morris, 672

F.3d at 556. As such, the district court did not abuse its discretion in the instruction it gave the jury regarding the "intent to defraud" element of wire fraud.

## III.

We next consider whether the district court erred in allowing the government to introduce evidence of a separate, subsequent scheme in which Thomas attempted to defraud mortgage lenders. Prior to trial, Thomas filed a motion in limine seeking the exclusion, pursuant to Federal Rule of Evidence 404(b), of any testimony relating to her participation in this scheme. The evidence concerned the 2007 purchase of a home by the grandmother of Thomas's child. Thomas served as the real estate agent on the transaction. At trial, the grandmother testified that Thomas encouraged her to falsify her income on loan paperwork to obtain a loan and advised her to produce fake rental agreements to support the falsified income. The district court denied the motion, allowing the testimony as evidence of intent or absence of mistake. Thomas asserts that the district court erred in admitting this evidence because the witness providing this testimony made contradictory statements and the evidence was more prejudicial than probative. We review a district court's admission of Rule 404(b) evidence for abuse of discretion. United States v. Hawkins, 548 F.3d 1143, 1146 (8th Cir. 2008). "We construe Rule 404(b) broadly as a rule of inclusion, and we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Id. (internal quotation marks omitted).

Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But a court may admit evidence of another wrong or act when it is relevant to any issue in the trial other than the defendant's criminal disposition. United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002). Permissible uses of this evidence include showing motive, opportunity,

intent, preparation, plan, knowledge, lack of mistake, identity, or lack of accident. Fed. R. Evid. 404(b)(2). When considering the admissibility of Rule 404(b) evidence for a permissible purpose, a court must determine that the evidence is relevant, is similar in kind and not too remote in time, is sufficiently supported by the evidence, and the potential prejudice does not substantially outweigh the probative value. Hawkins, 548 F.3d at 1146-47.

The government used this evidence for the permissible purposes of showing intent and lack of mistake rather than the impermissible purpose of propensity. The evidence also meets the other requirements for admissibility. First, the evidence is relevant because it helps prove a consequential issue in the case: whether Thomas intended to act fraudulently. See Fed. R. Evid. 401 ("Evidence is relevant if [] it has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action."). Thomas argued at trial that she did not have the requisite fraudulent intent to be convicted of wire fraud and this evidence helps rebut that argument.

Second, the subsequent fraudulent scheme is similar in kind and not too remote in time to be admitted. The schemes are similar because they both involve the misrepresentation of income to fraudulently obtain loans. The subsequent scheme is not too remote in time because the conduct for which Thomas was charged occurred in 2006 and the transaction at issue here occurred in 2007. No definitive rule governs how close to the charged event another wrong or act must be and courts should apply a reasonableness standard on a case-by-case basis. See United States v. Thomas, 398 F.3d 1058, 1063 (8th Cir. 2005). A one-year period between schemes satisfies this reasonableness standard. See, e.g., United States v. Wint, 974 F.2d 961, 967 (8th Cir. 1992) (holding that a five-year lapse between prior act and charged crime was not too remote in time to be admitted under Rule 404(b)); see also United States v. Franklin, 250 F.3d 653, 659 (8th Cir. 2001) ("The closer in time to the crime charged, the more

likely the evidence is to be admissible; but we have approved the admission of other crimes' evidence for acts committed up to 13 years before the crime charged.").

Third, sufficient evidence exists to allow the jury to find that the subsequent scheme occurred. Thomas argues, in part, that the district court should not have admitted the evidence because the grandmother made inconsistent statements, namely telling Thomas's then-attorney that the mortgage company, not Thomas, had encouraged her to submit false documents. But the district court should not make credibility determinations when deciding whether to admit evidence under Rule 404(b). See Huddleston v. United States, 485 U.S. 681, 687-90 (1988) (explaining that a district court should not engage in assessing a witness's credibility when making an admissibility determination under Rule 404(b)).

Finally, the risk of prejudice does not substantially outweigh the probative value of the evidence of the subsequent fraudulent scheme. We give the district court's determination that the evidence was not unfairly prejudicial great deference, and nothing in the record requires us to overturn this finding. See United States v. Ruiz, 412 F.3d 871, 881 (8th Cir. 2005) (explaining that appellate courts give great deference to a district court's balance of the probative value and prejudicial effect of the challenged evidence). We therefore conclude the district court did not abuse its discretion by admitting this evidence.

IV.

We now consider whether the district court erred in allowing the government to introduce evidence related to Thomas's unfiled 2006 tax return. In another motion in limine, Thomas sought the exclusion of an unfiled 2006 tax return and related testimony, arguing it was irrelevant and prejudicial because it had never been filed with the IRS or submitted to mortgage lenders. Thomas's accountant prepared the tax return and gave it to Thomas to file manually, although Thomas never made such

a filing. The district court denied the motion, allowing the tax return as evidence of Thomas's actual income and determining that it was not unfairly prejudicial. Thomas asserts that the admission of the tax return was in error because it was both irrelevant and unfairly prejudicial as it was never filed and thus never reported as Thomas's actual income. We review a district court's evidentiary rulings for abuse of discretion, reversing "only when an improper evidentiary ruling affects the substantial rights of the defendant, or the error had more than a slight influence on the verdict." Finan v. Good Earth Tools, Inc., 565 F.3d 1076, 1080 (8th Cir. 2009).

Under the Federal Rules of Evidence, relevant evidence is generally admissible unless the Constitution, a federal statute, another rule of evidence, or other Supreme Court Rule requires its exclusion. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. Under Rule 403, relevant evidence may be excluded if its prejudicial effect substantially outweighs its probative value. Fed. R. Evid. 403. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007) (internal quotation marks omitted). But "[s]imply because evidence is prejudicial does not mean that it must be excluded, and great deference is given the district court's balancing of the probative value and prejudicial impact of the evidence." Ruiz, 412 F.3d at 881 (citation omitted).

Thomas's 2006 unfiled tax return is relevant evidence because Thomas's actual income is integral to the charges against her. The government alleged Thomas misrepresented her income for 2006 on loan documents, and the unfiled tax return makes the government's allegations more probable. See Fed. R. Evid. 401. Thomas argues that admitting the evidence resulted in unfair prejudice because there was no evidence the tax return was filed nor any another evidence that Thomas reported this

-7-

income elsewhere. But the jury heard testimony that the tax return remained unfiled, affording the jurors the opportunity to determine the appropriate weight to assign this evidence. Thomas's unfair prejudice argument is, in essence, based on the damage the tax return does to her case. But "[u]nfair prejudice does not occur . . . merely because a piece of evidence damages a defendant's case." United States v. Nadeau, 598 F.3d 966, 969 (8th Cir. 2010). Thomas presents no other argument to demonstrate that the admission of tax return encouraged the jury to reach a verdict on an improper basis and thus was unfairly prejudicial. And the district court carefully considered this argument before deciding to admit the evidence. Nothing in the record requires us to depart from the deference we afford the district court's balancing of the probative value and prejudicial effect of this evidence. See Ruiz, 412 F.3d at 881. The admission of this tax return was not an improper ruling that "affect[ed] the substantial rights of the defendant" or "had more than a slight influence on the verdict." See Finan, 565 F.3d at 1080. The district court thus did not abuse its discretion in admitting the evidence related to the unfiled 2006 tax return.

V.

We next consider whether the district court erred by allowing the government to introduce evidence and argue during closing that Thomas should be convicted based on a failure to disclose debts. At trial, Thomas objected to the government's introduction of evidence related to unlisted debts on her loan application, asserting that the introduction of such evidence amounted to a constructive amendment to the superseding indictment. Thomas asserted that the government impermissibly argued that the jury could convict Thomas on Counts II and III of the indictment based on evidence of an unreported debt, evidence which was only referred to in Count I of the indictment. The district court overruled this objection, finding no constructive amendment occurred. Thomas asserts that the district court erred because it allowed the jury to convict Thomas of two counts in the indictment based on evidence only articulated in one separate count, resulting in a constructive amendment.

A constructive amendment of an indictment is a direct violation of the Fifth Amendment and is reversible error per se. United States v. Harris, 344 F.3d 803, 804 (8th Cir. 2003) (per curiam). "In reviewing an appeal based on a claim of constructive amendment, we consider whether the admission of evidence or the jury instructions created a 'substantial likelihood' that the defendant was convicted of an uncharged offense." United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007).

"A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." Id. Here, no constructive amendment occurred because Thomas was not convicted of a crime different from those charged in the indictment. Thomas was charged with and convicted of wire fraud and the additional evidence did not change the essential elements of this crime. This case is distinct from cases where courts have found constructive amendments. See, e.g., Stirone v. United States, 361 U.S. 212, 217 (1960) (finding constructive amendment when jury could have convicted defendant based on interference with shipments into or out of state when indictment only alleged interference with shipments into state); United States v. Yeo, 739 F.2d 385, 386-87 (8th Cir. 1984) (finding constructive amendment when jury could have convicted defendant of extortion for collecting debt from individuals other than the one named in the indictment).

Although Thomas labels her argument as one challenging a constructive amendment, her claims are more appropriately considered as alleging a variance. "The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." United States

v. Stuckey, 220 F.3d 976, 981 (8th Cir. 2000).  Because Thomas's argument is, in essence, a variance argument, we now consider whether the district court erred in determining no fatal variance occurred.  While "[a] constructive amendment is reversible error per se, [] a variance is subject to the harmless error rule."  Id.  "A variance between the indictment and proof at trial requires reversal of a conviction only if the variance actually prejudiced the defendant.  The primary consideration in this determination is whether the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial."  United States v. Begnaud, 783 F.2d 144, 148 (8th Cir. 1986) (citation omitted).

The district court considered whether the introduction of the unreported debts amounted to a variance, ultimately concluding that no fatal variance had occurred:

> [W]e are talking about these applications that Ms. Thomas filled out on these four loans.  It's not something unexpected, given that the documents came from her own hand and that Ms. Thomas's lawyers have had all of the documents from the beginning.  And, in fact, those documents are in evidence without objection from Ms. Thomas.  The fact that they are in evidence, it seems to me, means that whatever they say, whatever is in there, is in play. . . . There is some difference, there is some variance between the words of the indictment and the proof that's proposed to come in, but I do not believe that it is a fatal variance or that it is overly prejudicial to Ms. Thomas, given the source of the variance in those documents and given the law [of the Eighth Circuit].

R. Doc. 156, at 316-17.

We agree that no fatal variance occurred because, even with the introduction of evidence not specifically mentioned in the indictment in relation to these two counts, Thomas was fully and fairly apprised of the charges she had to defend against at trial. The documents at issue had already been entered into evidence and the indictment mentioned the specific allegation with respect to one count. See Begnaud,

783 F.2d at 148 (finding no fatal variance when the indictment set out two specific representations made in furtherance of a scheme to defraud and prosecution offered evidence of, and jury instruction allowed jury to consider, other misrepresentations defendant made).  And the government never wavered in the theory of the case it presented at trial that Thomas committed wire fraud by misrepresenting her income on loan documents.  See United States v. Adams, 604 F.3d 596, 600 (8th Cir. 2010) ("We conclude no variance occurred either, particularly because the government never wavered in its theory of the case at trial . . . .").  Because Thomas's argument fails under either a constructive amendment or variance theory, we affirm the district court on this claim.

VI.

Finally, we consider whether the district court erred in polling individual jurors and issuing an Allen charge to the jury.  After roughly six hours of deliberation, the jury sent a note to the court indicating that it was deadlocked.  The court brought the jury back to the courtroom and began polling individual jurors to determine if further deliberations could produce a verdict.  The court only polled three jurors before determining that the note did not express the unanimous views of the jury.  The court then issued an Allen charge to the jury even though the government had not requested it and Thomas opposed it.  After two additional hours, the jury returned a guilty verdict. Thomas asserts that this instruction and questioning of the jurors had the impermissible effect of coercing jurors into reaching a verdict and singling out specific jurors.  We review challenged jury instructions, including Allen charges, for abuse of discretion.  United States v. Evans, 431 F.3d 342, 347 (8th Cir. 2005).

"An Allen-charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." United States v. Walrath, 324 F.3d 966, 970 (8th Cir. 2003) (internal quotation marks omitted).  "Supplemental jury instructions are permissible, so long as they are not coercive." United States v. Ybarra, 580 F.3d 735,

-11-

738 (8th Cir. 2009). "[F]our elements bear on whether an Allen charge had an impermissibly coercive effect on the jury: 1) the content of the instruction, 2) the length of deliberation after the Allen charge, 3) the total length of deliberation, and 4) any indicia in the record of coercion or pressure upon the jury." United States v. Thomas, 946 F.2d 73, 76 (8th Cir. 1991) (internal quotation marks omitted). Additionally, an inquiry as to the division of the jury for the purposes of determining if further deliberations would be fruitful is not coercive in the same manner as an inquiry seeking to determine how the jury stands on the merits. See Lowenfield v. Phelps, 484 U.S. 231, 240 (1998). And Allen charges and accompanying statements are less likely to be coercive when they do not single out a particular side of deliberations. See United States v. Washington, 255 F.3d 483, 485-86 (8th Cir. 2001) (finding Allen charge was not coercive when instruction did not reference either party or direct the jury to find for a particular party).

Nothing in the record indicates that the Allen charge coerced the jury into returning a verdict. First, the content of the charge reminded the jurors of their obligations to examine the evidence and questions submitted to them with a mind toward reaching an agreement, but reminded them that they should not surrender their honest convictions and give in to opposing opinions. The Allen charge also reminded the jurors that "a hung jury is acceptable to the law, just like a verdict of not guilty or guilty. All three of those are acceptable outcomes in the case." R. Doc. 159, at 837. Second, the jurors deliberated for a further two hours after the Allen charge, indicating that they did not feel coerced into immediately returning a verdict. Third, the total length of deliberations was roughly eight hours: six hours prior to the Allen charge and an additional two hours after the instruction. The trial lasted four and a half days. The length of the trial and the total period of deliberation were not so disproportionate as to raise an inference of coercion. See Thomas, 946 F.2d at 76 (finding no inference of coercion when jury deliberated for a total of nine hours after a two-day trial); United States v. Smith, 635 F.2d 716, 720-22 (8th Cir. 1980) (finding four hours of total deliberation for a two-day trial did not raise an inference

of discrimination). Finally, there is no other "indicia in the record of coercion or pressure upon the jury." The district court's polling of individual jurors was simply an attempt to determine whether further deliberations would be helpful in reaching a verdict. The judge intended to poll the entire jury, but only needed to poll three jurors before concluding that further deliberations could be fruitful. He did not continue polling the entire jury precisely because he was concerned about singling out a particular side of the deliberations. This is evidenced by the judge's statement to the jury that "I'm not going to poll the rest of you because I don't want to - - I don't want people speaking or to give any indication of how the jury might stand on the issue," and his statement to the attorneys that "I abandoned midstream my effort at polling everyone because I grew concerned that the jury inadvertently might be speaking to us about their views on the merits." R. Doc. 159 , at 834-35, 838. We therefore conclude the district court did not abuse its discretion in issuing an <u>Allen</u> charge and polling individual jurors.

## VII.

For the foregoing reasons, we affirm the judgment of the district court.

_____