# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3454

_____

United States of America

*Plaintiff - Appellee*

v.

Steven Barros Pinto, also known as Yeaboy

*Defendant - Appellant*

_____

No. 21-3461

_____

United States of America

*Plaintiff - Appellee*

v.

Steven Barros Pinto, also known as Yeaboy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: October 19, 2023
Filed: July 1, 2024

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

After a nineteen-day trial, a jury convicted Steven Barros Pinto on multiple counts related to the importation and distribution of drugs. The district court imposed a total sentence of 400 months of imprisonment and 6 years of supervised release.[1] Pinto appeals.

## I.

At Pinto's trial, the government's evidence established a drug distribution and importation conspiracy spearheaded by Jason Berry and Daniel Ceron, who began using contraband cellphones to operate a drug-trafficking operation by way of the "dark web" while they were serving sentences in a Canadian prison. They recruited distributors online, and between 2013 and 2014, Anthony Gomes and Brandon Hubbard separately responded to their solicitation. Berry and Ceron then directed that fentanyl—first pills, and then powder—be shipped from China to Gomes in Florida and to Hubbard in Oregon, for distribution.

Gomes testified at trial for the government. He explained that Pinto was a childhood friend from Rhode Island and that he asked Pinto to work with him to distribute pills, which were supplied by Ceron. Initially, Pinto declined. But in 2015, Pinto contacted Gomes, asking if he could "try to move some of the pills." At this point, Gomes was also manufacturing his own pills, using "product" he obtained from Ceron. Eventually Gomes moved his pill press—the machine used to make the powder into fentanyl pill form—operation to Rhode Island, where Pinto still lived,

_____

[1]Related to the conduct discussed in this opinion, Pinto was also separately charged and convicted on several counts in Case No. 3:20-cr-00011. The two cases were consolidated for trial and appeal. On appeal, Pinto does not challenge the separate judgment, so we do not address it further.

-2-

and Pinto assisted in the manufacturing process. Over time, Pinto became an integral part of the fentanyl pill production and distribution network, utilizing others to assist in distribution and financial transactions in multiple states.

With proceeds from their fentanyl operation, Pinto and Gomes bought a flea market, also known as a "swap shop," where vendors rented space and sold products from booths. According to Gomes, he and Pinto "continu[ed] the drug business [by] purchasing this flea market and [were] making business decisions together." They would "mix [the flea market cash] in with the drug money," and then "split everything down the middle fifty-fifty."

Hubbard also testified at trial. Hubbard said that in 2014 and early 2015, he lived in Oregon, where he sold fentanyl that he obtained from Berry and Ceron to buyers in all 50 states and in other countries. Ryan Jensen, a local dealer in Grand Forks, North Dakota, purchased fentanyl from Hubbard in December 2014. Jensen sold some of the fentanyl to three friends in Grand Forks, including Bailey Henke, on January 2, 2015. Henke died of a fentanyl overdose, and North Dakota law-enforcement officers arrested Jensen the next morning.

Three years into the investigation, Pinto was charged in the district of North Dakota on multiple counts, including Count 1, conspiracy to distribute controlled substances, 21 U.S.C. § 846; Count 2, conspiracy to import controlled substances, 21 U.SC. § 963; Count 3, participation in a continuing criminal enterprise (CCE), 21 U.SC. § 848(a), (c); Count 6, obstruction of justice, 18 U.S.C. §§ 1502 and 2; and Count 7, conspiracy to launder money, 18 U.S.C. § 1956(h).

On appeal, Pinto argues venue was improper on the drug conspiracy counts (Counts 1 and 2),[2] and challenges his conviction on the money laundering conspiracy

---

[2]For purposes of this argument, Pinto addresses the conspiracy counts (Counts 1 and 2) collectively.

count (Count 7). He also raises a Double Jeopardy argument as to Counts 1, 2, and 3. We address each argument in turn.

## II.

Pinto first argues that the government's evidence was insufficient to establish the existence of a single conspiracy connecting him to North Dakota.[3] According to Pinto, the evidence showed there were multiple conspiracies, with Ceron and Berry acting as the fentanyl suppliers for all of them. Pinto concedes he was a participant in one of these: Pinto and Gomes agreed to distribute fentanyl—which Ceron supplied—in several states in the eastern part of the United States. But he contends that this conspiracy was separate and apart from another conspiracy, which involved Hubbard and Jensen who agreed to distribute fentanyl—also supplied by Ceron—in North Dakota. Because he "was not involved in any conspiracy that operated in North Dakota," Pinto argues venue was not proper in North Dakota. See United States v. Banks, 706 F.3d 901, 904 (8th Cir. 2013) ("A federal crime may be prosecuted in any district in which such offense began, continued, or was completed." (citation omitted)). See generally U.S. Const. amend. VI (concerning the rights of criminal defendants); Fed. R. Crim. P. 18 (concerning the place of prosecution and trial).

"Whether the government's proof [at trial] established [only] a single conspiracy or multiple conspiracies is a question of fact for the jury." United States v. Morales, 113 F.3d 116, 118 (8th Cir. 1997). "We review a claim of insufficiency of the evidence [such as this one] *de novo* while viewing the evidence in a light most favorable to the verdict." United States v. De La Cruz Nava, 80 F.4th 883, 887 (8th Cir. 2023) (citation omitted), cert. denied sub nom. Guzman v. United States, 144 S. Ct. 711 (2024); United States v. Oliver, 90 F.4th 1222, 1224 (8th Cir. 2024) (same).

---

[3]As Pinto acknowledges, his claim of improper venue is based entirely on this argument. As a result, our resolution of that issue resolves whether venue was proper for Counts 1 and 2, as well as for Count 3—the CCE count, and Count 6—the obstruction of justice count.

"A reversal is appropriate only where no reasonable jury could have found the defendant guilty beyond a reasonable doubt." De La Cruz Nava, 80 F.4th at 887 (citation omitted).

Neither side challenges the instruction to the jury, which required it to decide "whether there were really two (or more) separate conspiracies to commit [the charged offenses]."[4] "A single conspiracy may be found when the defendants share a common overall goal and the same method is used to achieve that goal, even if the actors are not always the same." United States v. Campbell, 986 F.3d 782, 797 (8th Cir. 2021) (quoting United States v. Gilbert, 721 F.3d 1000, 1005 (8th Cir. 2013)). Here, the evidence showed that the common goal of the participants was to import and distribute fentanyl throughout the United States. A reasonable jury could infer that the Ceron-Berry network was wide-reaching. Ceron and Berry supplied pills to both Gomes and Hubbard, both of whom became involved by knowingly responding to an online posting. And both Gomes and Hubbard also learned that the fentanyl they ordered online for redistribution was shipped to them from Canada.

As to Pinto, the jury heard evidence that Pinto helped his longtime friend Gomes distribute the fentanyl that Gomes obtained from Ceron. Pinto knew that Gomes's "source" was in Canada and that his "supplier" was in China. He also helped wire money to Canada on several occasions, and at least once to Panama to help Gomes's "source" retain legal counsel. Pinto also supplied addresses in Rhode Island to Gomes where drug shipments from China could be delivered. And after his arrest, Pinto described to others how he made an "astronomical amount" of money from selling fentanyl that he said came from China. Pinto conceded at trial that he was in a conspiracy with Gomes to distribute controlled substances, and the jury

---

[4]The jury was also instructed on venue, and it found that the government had proven venue by a preponderance of the evidence. See United States v. Johnson, 462 F.3d 815, 819 (8th Cir. 2006) ("The government bears the burden of proving venue by a preponderance of the evidence." (quoting United States v. Bascope-Zurita, 68 F.3d 1057, 1062 (8th Cir. 1995))).

could infer, based on Pinto's relationship with Gomes, that Pinto knew his friend was working closely with his "source," Ceron, who led an organization that included other participants like them.

Pinto counters that he never spoke to—or had any relationship with—Ceron. But Ceron testified at trial that he "wasn't interested" in meeting Pinto, and that it was "simpler" to just deal with Gomes directly. When asked why the government had no evidence of any communication between Ceron and Pinto, Ceron explained, "isn't that what [the] dark web is? . . . . conversation through [the] dark web is always through means of trying to evade any traces back." The jury could reasonably infer from the evidence presented that given the nature of Ceron's operation, a certain level of anonymity was desirable or necessary to achieve the ultimate objective. Pinto further argues no evidence was presented to show that he knew about Hubbard and Jensen or their association with Ceron and Berry. But members of a conspiracy do not have to know one another, nor do they need to be aware of all the activities of other participants in the conspiracy. See United States v. Sims, 999 F.3d 547, 551 (8th Cir. 2021). Thus, the fact that Pinto was not aware of Hubbard's activities in Oregon, alone, is not a sufficient basis to overturn a jury verdict that Ceron and Berry operated a single conspiracy of which both Pinto and Hubbard were a part. Id.; see also United States v. Lopez, 880 F.3d 974, 982 (8th Cir. 2018) ("In conspiracy cases, venue is proper 'in any district where *any* conspirator commits an overt act, even if other conspirators were never physically present in that district.'" (citation omitted)).

Nevertheless, as Pinto sees it, this case involved not a single overarching conspiracy, but rather a "rimless wheel" conspiracy, that is, one where "multiple unconnected 'spokes' dealt independently with the same 'hub' conspirator[s]"— Berry and Ceron. United States v. Hunter, 862 F.3d 725, 726 (8th Cir. 2017). Pinto argues that his was a case where "[t]he indictment charged a single conspiracy only; the proof showed more than one; [and] the instructions told the jury erroneously that on the evidence they could find the defendants guilty of a single confederation." Kotteakos v. United States, 328 U.S. 750, 772 (1946).

Pinto argued this point to the jury, which was instructed that the government needed to prove "beyond a reasonable doubt that [Pinto] was a member of the single conspiracy." And Pinto highlighted for the jury the evidence that lent credence to his position. We must view the evidence presented in its entirety, "in the light most favorable to the verdict." Oliver, 90 F.4th at 1224 (quoting United States v. Thompson, 11 F.4th 925, 929 (8th Cir. 2021)). Under "[t]his strict standard," we cannot say that "no reasonable jury" could conclude that Pinto knowingly manufactured and distributed controlled substances that were imported from overseas, and was aware that the conspiracy he joined had "one overall agreement" involving participants known and unknown to him. See United States v. White, 794 F.3d 913, 918 (8th Cir. 2015) (citation omitted); see also Campbell, 986 F.3d at 796 (quoting United States v. Radtke, 415 F.3d 826, 838 (8th Cir. 2005)).

We also find no grounds for reversal in Pinto's challenge to the credibility of the government's cooperating witnesses, including co-conspirators Ceron and Gomes who testified about the scope of the operation and Pinto's involvement and knowledge of it. Resolving factual disputes and assessing witness credibility are quintessential jury tasks. See United States v. Dickson, 70 F.4th 1099, 1103 (8th Cir. 2023) ("We have repeatedly upheld jury verdicts based solely on the testimony of conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." (quoting United States v. Buckley, 525 F.3d 629, 632 (8th Cir. 2008))).

Because there was sufficient evidence to support the jury's finding of a single conspiracy, venue was proper in North Dakota.[5]

---

[5]To the extent Pinto challenges the denial of his pretrial motion to dismiss based on improper venue, we agree with the district court that viewing the indictment in the light most favorable to the government, there was a relevant factual dispute as to venue. See United States v. Jaber, 509 F.3d 463, 466 (8th Cir. 2007) ("Venue ordinarily is a question of fact for the jury and must be instructed upon if in issue." (citation omitted)); see also United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012) (explaining that an indictment is dismissible "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination

III.

Next, Pinto challenges his conviction on the money laundering conspiracy count under 18 U.S.C. § 1956(h) (Count 7). He alleges that the indictment's failure to name any of his co-conspirators resulted in either a constructive amendment or a fatal variance, either of which would require reversal. See United States v. Thomas, 791 F.3d 889, 896 (8th Cir. 2015) ("A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner . . . that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." (quoting United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007))); see also United States v. Shavers, 955 F.3d 685, 694 (8th Cir. 2020) ("A variance arises when the evidence presented proves facts that are materially different from those alleged in the indictment." (quoting United States v. Buchanan, 574 F.3d 554, 564 (8th Cir. 2009))). Because he raises this argument for the first time on appeal, we review for plain error.[6] United States v. Hernandez, 919 F.3d 1102, 1107 (8th Cir. 2019); see United States v. Olano, 507 U.S. 725, 732–36 (1993) (elaborating on plain error review).

_____

of facts that should have been developed at trial" (quoting United States v. Snipes, 611 F.3d 855, 866 (11th Cir. 2010))). As a result, the district court did not abuse its discretion—as Pinto argues—when it admitted evidence related to Henke's death in North Dakota, and Hubbard's drug sales from Oregon. See United States v. Mackey, 83 F.4th 672, 675 (8th Cir. 2023) (standard of review).

[6]Pinto has filed a motion to supplement the record on appeal, seeking to submit unidentified "Grand Jury minutes" in support of his challenge to his conviction on Count 7. See Fed. R. App. P. 10(e). We deny the motion. Pinto concedes that these minutes were not presented to the district court, but he has failed to explain their relevance. See United States v. Holm, 745 F.3d 938, 943 (8th Cir. 2014) (declining to modify the record where the moving party "made no showing that any of [the submitted] material would affect . . . resolution" of the issue on appeal).

At its core, Pinto's argument is that he lacked sufficient notice of the allegations against him on this count. His attempt to support this argument is cursory at best. As to whether there was a constructive amendment, Pinto fails to explain how the essential elements of the money laundering conspiracy as charged were altered at trial such that he was convicted of an offense different from the one charged in the indictment. Thomas, 791 F.3d at 896. As to a fatal variance, which is more in line with Pinto's argument on appeal, Pinto has not said how the government's evidence at trial proved facts materially different from those alleged in the indictment. See Buchanan, 574 F.3d at 564–65.

In any event, "[t]he primary consideration [as to variance] is whether the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial." Thomas, 791 F.3d at 897 (quoting United States v. Begnaud, 783 F.2d 144, 148 (8th Cir. 1986)). Here, the indictment tracked the language of the statute. It also included the dates and locations of the conduct alleged, described the nature of the relevant financial transactions, and identified several overt acts alleged to have been taken in furtherance of the conspiracy. This provided Pinto with sufficient notice of the basis of the charge. See United States v. Huggans, 650 F.3d 1210, 1217–18 (8th Cir. 2011) (explaining that an indictment sufficiently delineates facts that would establish the charged offense when it provides a time frame for the alleged illegal acts and, in a case involving illegal substances, delineates what substances are involved). The government's failure to identify the co-conspirators by name does not doom the charge, as "the identity of a defendant's coconspirators is not an essential element of conspiracy." United States v. Johnson, 719 F.3d 660, 668 (8th Cir. 2013). Moreover, Pinto's vigorous defense at trial suggests that this omission did not prejudice him: he was aware of the identity of his co-conspirators and was not surprised by the government's evidence on the money laundering conspiracy charge. Pinto has not identified any error, let alone one that was both "obvious" and "affected his substantial rights." Hernandez, 919 F.3d at 1107, 1109.

IV.

Finally, Pinto argues that his separate convictions and sentences on Counts 1, 2, and 3 violate the prohibition against Double Jeopardy. We review this issue, raised for the first time on appeal, for plain error. United States v. Watters, 947 F.3d 493, 496 (8th Cir. 2020).

The Double Jeopardy Clause prohibits "successive prosecutions and multiple punishments for the same criminal offense." United States v. Bennett, 44 F.3d 1364, 1368 (8th Cir. 1995) (citations omitted). When "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." United States v. Hansen, 944 F.3d 718, 724 (8th Cir. 2019) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).

Count 1 charged Pinto with conspiracy to distribute drugs, in violation of 21 U.S.C. § 841 and 846. Count 3 charged him with engaging in a Continuing Criminal Enterprise (CCE), in violation of 21 U.S.C. § 848. Count 3 incorporated the violation alleged in Count 1 as one of its elements, and the law is clear that Count 1 is a lesser included offense of Count 3. See Rutledge v. United States, 517 U.S. 292, 307 (1996) ("A guilty verdict on a § 848 charge necessarily includes a finding that the defendant also participated in a conspiracy violative of § 846; [the latter] is therefore a lesser included offense of CCE."). The government and Pinto agree that he cannot be convicted and sentenced on both Counts 1 and 3 without violating the prohibition against Double Jeopardy. This error is plain under longstanding Supreme Court precedent, affects Pinto's substantial rights, and seriously affects the fairness of this judicial proceeding. See Olano, 507 U.S. at 732.

Count 2 charged Pinto with conspiracy to import drugs into the United States, in violation of 21 U.S.C. § 963. Pinto also argues that it, too, is a lesser included offense of CCE. But Count 2 required proof that Pinto conspired to *import* drugs

-10-

into the United States,[7] and Count 3, Pinto's CCE charge, only incorporated Pinto's conspiracy to *distribute* drugs. "[C]onspiracy qualifies as a predicate to CCE." United States v. Van Nguyen, 602 F.3d 886, 899 (8th Cir. 2010) (citations omitted), abrogated on different grounds by Honeycutt v. United States, 581 U.S. 443 (2017). Here, the government selected the drug distribution conspiracy rather than the drug importation conspiracy to serve as the predicate offense for Pinto's CCE charge. Only Count 1 is a lesser included offense of Count 3. Count 2 is not.

V.

We remand to the district court to vacate Pinto's conviction on either Count 1 or Count 3 and proceed to resentencing. We affirm the judgment in all other respects.

_____

---

[7]To the extent that Pinto argues that imposing separate sentences on Count 1 and Count 2 violates the Double Jeopardy Clause, his argument is foreclosed by Supreme Court precedent. Albernaz v. United States, 450 U.S. 333, 339 (1981) (holding that conspiracy to distribute marijuana and conspiracy to import marijuana "specify different ends . . . distribution as opposed to importation" and "each provision requires proof of a fact [that] the other does not").