# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1399

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jym Jenine Butcher Bennett, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 15, 2008
Filed: April 8, 2009

_____

Before RILEY, BOWMAN, and COLLOTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Jym Jenine Butcher Bennett appeals the revocation of her supervised release. She presents a single issue for our review: Did the District Court[1] abuse its discretion when it refused to revoke Bennett's supervised release based on the initial evidence submitted at the revocation hearing and instead continued the hearing to a later date so that the parties could present additional evidence? We answer this question in the negative and affirm the judgment of the District Court.

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

The underlying facts of Bennett's convictions and sentences are of little relevance to the issue on appeal. It is sufficient to note that on September 27, 2007, while Bennett was serving a term of supervised release, police obtained evidence that Bennett was selling illegal drugs in violation of the conditions of her release. The government filed a motion to revoke Bennett's supervised release, and the District Court held a hearing on the motion on November 21, 2007.

At the revocation hearing, the government called two witnesses, both law enforcement officers. The officers testified extensively about their conversations with persons who indicated that Bennett was selling illegal drugs. One officer also testified that he found a small amount of marijuana, $5,500, and two electronic scales in Bennett's residence. The government introduced into evidence a picture of Bennett apparently smoking from a narcotics pipe. The government then informed the court that it had "no further evidence" and "would rest." Tr. of Nov. 21, 2007, Revocation Hr'g at 38. Bennett testified in her own defense and also called her husband as a witness. Both stated that the $5,500 belonged to Bennett's husband, that the scales belonged to Bennett's son, that the picture was taken before Bennett was arrested on the original charges, and that they where unaware of the marijuana's presence in their residence. After hearing from both parties, the District Court ruled, "I'm not going to violate her on this evidence. . . . I'm not going to revoke on this basis." Id. at 81. The court expressed concern that the testimony given by the law enforcement officers constituted hearsay and asked the government if it would like to "continue this to get in" testimony from the persons upon whom the officers relied. Id. The government accepted the continuance. The court then noted that continuing the hearing would also give Bennett's husband "more time to try to prove the money is his," so that it would not be subject to seizure. Id. at 82. Bennett did not object during the November 21, 2007, hearing to the court's sua sponte continuance.

On January 22, 2008, the revocation hearing continued. At the start of the proceeding, Bennett objected to the presentation of additional evidence, arguing that

allowing the government to "reopen" its case violated her due process rights. Tr. of Jan. 22, 2008, Revocation Hr'g at 3. The District Court overruled the objection, noting that it was the court, not the government, that had "invited further evidence." Id. at 7. The government called its first witness, but the hearing was again continued when the witness requested attorney representation. The District Court convened the hearing a third time on February 1, 2008.[2] Bennett again objected to the presentation of additional evidence, and the court overruled the objection without further comment. The government called four witnesses; Bennett presented no additional evidence. At the conclusion of the revocation hearing, the District Court found that Bennett had violated the terms of her supervised release and sentenced her to thirty-six months' imprisonment. See 18 U.S.C. § 3583(e)(3).

On appeal, Bennett asserts that the District Court's decision to continue the revocation hearing in order for the government to submit additional evidence violated both her due process right to fundamental fairness and the Double Jeopardy Clause of the Fifth Amendment. "We review questions arising under the constitution de novo." United States v. Ray, 530 F.3d 666, 667 (8th Cir. 2008). We review for abuse of discretion both the District Court's decision to continue the revocation hearing, see United States v. Cotroneo, 89 F.3d 510, 514 (8th Cir.), cert. denied, 519 U.S. 1018 (1996), and its decision to revoke Bennett's term of supervised release, see United States v. Montgomery, 532 F.3d 811, 814 (8th Cir. 2008).

Bennett correctly notes that the Due Process Clause of the Fourteenth Amendment imposes limits on the revocation of the conditional liberty enjoyed by persons serving terms of supervised release. See Black v. Romano, 471 U.S. 606, 610

---

[2]Bennett had filed a Motion to Stay Proceedings Pending Appeal on January 24, 2008, but the District Court denied the motion on January 30, 2008.

(1985).[3] The Supreme Court has recognized, however, that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey v. Brewer, 408 U.S. 471, 480 (1972); see also Black, 471 U.S. at 613; United States v. Black Bear, 542 F.3d 249, 253 (8th Cir. 2008). The Court set out the following minimum due process requirements for revocation hearings:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 489; see also Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973) (applying the Morrissey due process requirements to probation revocation hearings).

Bennett "does not argue that the District Court failed to follow the[se] minimum due process requirements." Br. of Appellant at 14. Rather, Bennett simply asserts that the District Court unfairly gave "the Government a second bite of the apple" when the court continued the hearing. Id. at 15. Bennett has cited no authority in support of her argument that a defendant's due process rights are violated when a court continues a revocation hearing in order for the government to present non-hearsay evidence. Our research has likewise failed to identify any cases so holding. We are of the opinion

---

[3]Supreme Court jurisprudence governing parole and probation revocation hearings also governs supervised release revocation hearings. See United States v. Black Bear, 542 F.3d 249, 253 n.3 (8th Cir. 2008); United States v. Martin, 382 F.3d 840, 844 (8th Cir. 2004).

that the District Court's actions, rather than violating the Due Process Clause, demonstrate a respect for the due process requirement that Bennett have the opportunity to confront witnesses against her.

Bennett also argues that "the Double Jeopardy Clause prohibits the Government from presenting additional evidence after the Court has found that the Government has failed to meet its burden of proof." Reply Br. of Appellant at 5. This argument is without merit. The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This protection applies both to successive punishments and to successive prosecutions for the same criminal offense." United States v. Dixon, 509 U.S. 688, 696 (1993). A hearing to determine whether supervised release should be revoked, however, is not a criminal prosecution. See Morrissey, 408 U.S. at 489; Ray, 530 F.3d at 668; United States v. House, 501 F.3d 928, 931 (8th Cir. 2007). Moreover, the revocation of supervised release is a penalty attributable to the original conviction, not a new punishment. Johnson v. United States, 529 U.S. 694, 700–01 (2000). Bennett, therefore, was not at risk for either successive prosecution or successive punishment at the multiple revocation hearings, and double jeopardy concerns did not arise.[4] See id. (recognizing that issues of double jeopardy are not raised by the revocation of supervised release because revocation is a penalty attributable to the original conviction, not a new punishment); Monge v. California, 524 U.S. 721, 728 (1998) (reiterating that "double jeopardy protections [are] inapplicable to sentencing proceedings . . . because the determinations at issue do not place a defendant in jeopardy for an 'offense'"); United States v. Dees, 467 F.3d 847, 853–54 (3d Cir. 2006) (ruling that the Double Jeopardy Clause was not violated when the district court revoked three concurrent terms of supervised release—and

---

[4]The cases on which Bennett relies are inapposite because they involved trials for criminal offenses, rather than hearings to revoke supervised release. See Smith v. Massachusetts, 543 U.S. 462 (2005); United States v. Dixon, 509 U.S. 688 (1993); Burks v. United States, 437 U.S. 1 (1978).

thereby imposed three consecutive terms of imprisonment—based on the same conduct), cert. denied, 128 S. Ct. 52 (2007).

Bennett's constitutional arguments fail. We hold that the District Court did not abuse its discretion by continuing Bennett's revocation hearing or by revoking her term of supervised release. The District Court's judgment is affirmed.

_____