# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2237

_____

United States of America

*Plaintiff - Appellee*

v.

Craig Watters

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: August 13, 2019
Filed: January 10, 2020

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

MELLOY, Circuit Judge.

In 2017, Defendant Craig Watters pleaded guilty to the charge of distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). The district

court[1] imposed a sentence at the bottom of the advisory guidelines range, 262 months, but ordered the sentence to run consecutive to the remaining portion of an earlier-imposed, 60-month, revocation-of-supervised-release sentence under 18 U.S.C. § 3583(k). Watters argues the current sentence punishes the same conduct as the revocation sentence in violation of the Fifth Amendment's prohibition on double jeopardy. He also argues the current sentence is substantively unreasonable. After the Supreme Court held § 3583(k) unconstitutional in United States v. Haymond, 139 S. Ct. 2369 (2019), we ordered supplemental briefing. We now affirm.

I.

In 2007, Watters pleaded guilty to one count of receipt of child pornography under 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). His offense carried a statutory maximum sentence of 240 months' imprisonment and his advisory guidelines range was 210–240 months. He received a substantially below-range sentence of 60 months' imprisonment and a lifetime of supervised release. He began serving his term of supervised release for the 2007 conviction in February 2012.

In 2014, monitoring software on Watters's personal computer revealed suspected child pornography. At a 2014 revocation hearing, the district court found Watters had violated the terms of his supervised in several respects. Videos obtained from Watters's computer depicted prepubescent children engaged in oral and anal sex with adult males. In addition, the government introduced evidence of Watters's online chats and emails including screen shots of images of child pornography that Watters had sent and received. The district court found Watters had received, possessed, and distributed child pornography in violation of his supervised release.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

As a result, the district court imposed a mandatory 60-month revocation sentence under 18 U.S.C. § 3583(k) and reimposed a lifetime of supervised release.

Watters did not appeal his revocation sentence. When coupled with his original term of imprisonment for the 2007 conviction, his total term of incarceration was 120 months—half of the statutory maximum and substantially below his original advisory guidelines range.

After imposition of the revocation sentence, investigation continued, and officers discovered that Watters also possessed additional files containing child pornography not identified at the time of revocation. These files included 29 videos of adult males sexually penetrating prepubescent children. In addition, officers discovered Watters had used Skype to trade child pornography.

In 2017, the United States charged Watters with several counts of distributing, receiving, and possessing child pornography, listing the 2007 conviction as a prior offense for statutory enhancement purposes. The underlying evidence to support the new charges included the evidence known at the time of the revocation proceedings and the later-discovered evidence. In November 2017, Watters pleaded guilty to distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1).

In May 2018, the district court sentenced Watters to 262 months' imprisonment based on an advisory guidelines range of 262–327 months. The district court ordered the new sentence to run consecutive to the 2014 revocation sentence. At the time of Watters's 2018 sentencing, he had approximately six months remaining to be served on his unappealed 2014 revocation sentence.[2]

---

[2]Watters's Presentence Investigation Report indicates that, prior to his recent sentencing, he was projected to be released from prison in November 2018.

At the 2018 sentencing, defense counsel requested a downward variance from 262 months to 202 months to account for the previously imposed, 60-month revocation sentence. In advocating for a 202-month sentence, counsel neither asserted a double jeopardy argument nor challenged the validity of the unappealed 2014 supervised release violation. In rejecting Watters's arguments, the district court discussed information contained in unobjected-to paragraphs of the Presentence Investigation Report that indicated Watters had participated in sex offender treatment and counseling but had not been successful in addressing his desire for child pornography. In fact, he had consistently attempted to minimize his culpability, denying that he received any sexual gratification from such materials. The court also emphasized that Watters engaged in conduct beyond the possession and distribution of child pornography, including participating in web cam sessions nude with minors, flashing people, and engaging in sex acts in public places. The court concluded Watters was "a recidivist . . . at a high risk to reoffend . . . [and] a danger to children."

II.

On appeal, Watters presents two arguments based on the theory that his current conviction and sentence impermissibly rely on the same actions that led to his 2014 revocation sentence. He first argues that his latest conviction and sentencing occurred in violation of the Fifth Amendment's prohibition on double jeopardy. Watters concedes that he did not assert his double jeopardy argument below and that we review his double jeopardy challenge only for plain error. See United States v. Bell, 411 F.3d 960, 966 (8th Cir. 2005). He also argues the district court erred and imposed an "unreasonable sentence" "by not varying or departing downward in consideration of the [2014 supervised release sentence] for the same operative facts and for the exact same crime of distribution of child pornography" as his current offense. We review the substantive reasonableness of his sentence for abuse of discretion. See United States v. Wisecarver, 911 F.3d 554, 557 (8th Cir. 2018).

At the time of Watters's sentencing, the law in our circuit was clear. It was not a violation of the double jeopardy clause to impose a sentence for a new conviction based on the same conduct that had given rise to a revocation sentence. See United States v. Wilson, 939 F.3d 929, 931 (8th Cir. 2019) ("It has long been the jurisprudence of this court that the same conduct can result in both a revocation of . . . supervised release and a separate criminal conviction without raising double jeopardy concerns." (citing United States v. Dang, 907 F.3d 561, 567 (8th Cir. 2018); United States v. Bennett, 561 F.3d 799, 802 (8th Cir. 2009))). We, and the Supreme Court, had consistently characterized revocation sentences as punishment for the earlier, underlying conviction and for the breach of the trust extended to the defendant pursuant to the terms of supervised release. See Johnson v. United States, 529 U.S. 694, 700 (2000); Bennett, 561 F.3d at 802 ("A hearing to determine whether supervised release should be revoked, however, is not a criminal prosecution. Moreover, the revocation of supervised release is a penalty attributable to the original conviction, not a new punishment." (internal citation omitted)). We did not characterize the revocation sentence as punishment for the new law violation that occurred during the term of supervised release.

In June 2019, however, the Supreme Court issued its opinion in Haymond, holding § 3583(k) unconstitutional. The Court characterized § 3583(k) as mandating a new minimum term of incarceration based on judge-found facts, in violation of defendants' Sixth Amendment jury rights. Haymond, 139 S. Ct. at 2386 (Breyer, J., concurring). Haymond included a four-justice plurality authored by Justice Gorsuch and a separate opinion by Justice Breyer concurring in the judgment. As noted by the dissent, Justice Breyer's opinion is the narrower opinion, and therefore controls. Id. (Alito, J., dissenting).

Justice Breyer wrote that, in general, supervised release revocations are "typically understood as 'part of the penalty for the initial offense.'" Haymond, 139 S. Ct. at 2386 (quoting Johnson, 529 U.S. at 700). As such, "[t]he consequences that

flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's 'breach of trust'—his 'failure to follow the court-imposed conditions' that followed his initial conviction—not 'for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct.'" Id. (quoting U.S. Sentencing Guidelines Manual, ch. 7 pt. A, intro. 3(b) (Nov. 2018)). Justice Breyer concluded, however, that § 3583(k) "is less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach." Id. He reached this conclusion because § 3583(k): (1) "applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute"; (2) "takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long"; and (3) "limits the judge's discretion . . . by imposing a mandatory minimum term of imprisonment . . . upon" judge-found facts. Id.

The Haymond dissent and plurality disagreed as to how to characterize revocation sentences when viewed against an underlying conviction and initial sentence—is the revocation sentence a new sentence based upon judge-found facts or is it merely a punishment for, and within the permissible statutory scope of, the initial conviction? The dissent emphasized that the defendant in Haymond initially had been sentenced to 38 months' imprisonment, followed by the mandatory 60 months of § 3583(k), such that his total sentence—even with the mandatory term of revocation—was still below the statutory maximum for his offense of conviction, 120 months. Id. at 2390. The dissent, therefore, interpreted the plurality opinion as an assault on § 3583(e) and the broader system of supervised release "carefully crafted for the purpose of laying the groundwork for later decisions of *much* broader scope." Id. at 2386. The plurality, in contrast, characterized its holding as limited in scope to § 3583(k) and not extending more generally to § 3583(e). Id. at 2383. The plurality noted, however, that the relationship between a statutory maximum and the combined initial and revocation sentences remained relevant. Id. at 2384 ("In most

cases (including this one), combining a defendant's initial and post-revocation sentences issued under § 3583(e) will not yield a term of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime . . . . [because] courts rarely sentence defendants to the statutory maxima." (citation and quotation marks omitted)).

Subsequent to Haymond, our court addressed a defendant's argument that Haymond made a revocation sentence under a different provision, § 3583(g), a double jeopardy violation. See United States v. Wilson, 939 F.3d 929 (8th Cir. 2019). We rejected the argument, noting that, although § 3583(g) made revocation mandatory, it limited possible revocation sentences to terms indexed to the severity of the initial, underlying conviction. Id. at 932–33 (discussing the relationship between § 3583(g) and the cross-referenced revocation-sentence limits identified in § 3583(e)). We concluded that "Section 3583(g), unlike subsection (k), requires the court to consider the underlying offense and gives the court discretion to determine the length of sentence up to the limitations of subsection (e)(3). This limitation demonstrates that § 3583(g) is designed to sanction the defendant's breach of trust rather than punish a separate crime." Id. at 933. And, in finding Haymond inapplicable to subsection (g), we emphasized that the combined revocation and initial sentences in Wilson added up to less than the statutory maximum authorized by the underlying conviction. Id. at 933 ("The total 105-month sentence is less than the statutory maximum 120 months authorized for Wilson's violation of 18 U.S.C. § 922(g)(1). Because the imposition of a sentence under § 3583(g) is a sanction rather than a punishment for a separate offense, criminal prosecution does not violate double jeopardy.").

Here, of course, we are faced squarely with the situation the court distinguished in Wilson. Watters's double jeopardy argument is based on § 3583(k). Watters invokes Haymond directly and argues that the plurality and Justice Breyer both determined that § 3583(k) does, in fact, serve as punishment for the new offense rather than punishment for the initial conviction or the breach of trust. Watters,

argues that, at least as applied to § 3583(k) revocations and subsequent prosecutions, Haymond abrogates our double jeopardy precedent.

We are not persuaded that Haymond dictates such a conclusion. In Haymond, the plurality expressly disavowed the dissent's characterization of the plurality's opinion as a broad, general attack upon revocation proceedings and sentences. 139 S. Ct. at 2383–84. Justice Breyer's narrow concurrence—the controlling opinion—did not hold that revocations were, in and of themselves, full-blown prosecutions or trials that necessarily would permit a defendant to invoke all of the various constitutional protections attendant to such proceedings. He held merely that § 3583(k) "is less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach." Id. at 2386. Importantly, in doing so, he stated that he "would not transplant the Apprendi[v. New Jersey, 530 U.S. 466 (2000)] line of cases to the supervised-release context." Id. at 2385. If the Supreme Court itself did not "transplant" the entire body of jury-right jurisprudence into the supervised release context, we should not presume it necessary to pull into that same context other, unrelated doctrines such as double jeopardy. Simply put, the fact that revocation pursuant to § 3583(k) is "like" punishment for a new offense does not mean that the reasoning of Haymond necessarily displaces our longstanding double jeopardy jurisprudence.

In any event, because our review is only for plain error, relief is not appropriate in this case. Before we may exercise discretion to grant plain-error relief, there must be an error that is "clear or . . . obvious" and "affec[ts] substantial rights." United States v. Olano, 507 U.S. 725, 734 (1993) (internal quotation marks and citations omitted). "'[I]n the ordinary case,' an error affects a defendant's substantial rights if the defendant can 'show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" United States v. Valquier, 936 F.3d 781, 784 (8th Cir. 2019) (quoting Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016)).

Here, for the reasons just stated, it is by no means clear that error occurred, much less error that is "clear or . . . obvious." Olano, 507 U.S. at 734. Moreover, it is difficult to find that the outcome would have been different in the absence of error. Watters, after all, did not appeal his revocation sentence. That sentence is not presently on appeal and was not challenged at sentencing on the current conviction. Watters did argue for credit or a departure at his latest sentencing based upon the 60-month revocation sentence. There, the bottom of the advisory guidelines range was 262 months and he argued for a 202-month sentence to account for the revocation sentence. The district court rejected that request, recounting the evidence and finding Watters to be a dangerous recidivist. Although not couched in terms of double jeopardy, the district court heard and considered Watters's argument and found the consecutive sentence of 262 months to be no greater than necessary to achieve the legitimate purposes of 18 U.S.C. § 3553(a).

Still, even assuming error and even assuming we were to reach the final prong of the plain error analysis, we do not believe the asserted error in this case merits relief. Relief pursuant to plain error review is "permissive, not mandatory," Olano, 507 U.S. at 735, and we "should correct a plain forfeited error affecting substantial rights if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," id. at 736 (alteration in original) (internal quotation marks and citations omitted). Here, as already noted, the revocation sentence and the original sentence for the 2007 conviction added up to 120 months—half of the applicable statutory maximum term of 240 months. In addition, the statutory maximum for the 2017 conviction was 480 months and the applicable advisory guidelines range was 262–327 months. Even if we were to consider the 2014 revocation sentence and the 2017 sentence as combined punishment for new conduct, the combined sentence could be considered, at most, to be 322 months. This term, too, was within the applicable advisory guidelines range for the new offense. As such, even if we were to hold Haymond abrogated our double jeopardy precedent concerning sentences after

revocation, Watters's case simply does not call into question the "fairness, integrity or public reputation of judicial proceedings."

Turning to the Watters's final argument, we do not find his sentence to be substantively unreasonable. The district court considered the 18 U.S.C. § 3553(a) factors and sufficiently explained its reasons for imposing a within-range sentence. In particular, the court was concerned with Watters's demonstrated recidivism, his related conduct above and beyond the possession and distribution of child pornography, and his apparent denial of culpability and interest in such materials.

We affirm the judgment of the district court.

_____