# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-2914

_____

United States of America

*Plaintiff - Appellee*

v.

Maria De La Cruz Nava, also known as Maria De La Cruz-Nava

*Defendant - Appellant*

_____

No. 22-2966

_____

United States of America

*Plaintiff - Appellee*

v.

Juan Guzman, also known as Juan Villarreal-Guzman, also known as Juan
Guzman-Villareal, also known as Victor Nava, also known as Francisco Lara, also
known as Francisco Lara-Paramo, also known as Ayala Ramoro, also known as
Carlos Solorio, also known as Daniel Solorio, also known as Flaco

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

Submitted: April 12, 2023
Filed: September 6, 2023

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.

ERICKSON, Circuit Judge.

Maria De La Cruz Nava and Juan Guzman were convicted of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i), (ii), and (h); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Guzman was also convicted of illegal re-entry, in violation of 8 U.S.C. § 1326(a), (b)(1), and 6 U.S.C §§ 202(3), 202(4), and 557. De La Cruz Nava challenges the sufficiency of the evidence against her, and Guzman contends the district court abused its discretion when it refused to allow witnesses who are Mexican nationals to testify by Zoom and admitted evidence of an unrelated assault with a firearm. We affirm in part and reverse in part the district court's denial of De La Cruz Nava's motion for judgment of acquittal and vacate her conviction for conspiracy to commit money laundering. We reverse the district court's denial of De La Cruz Nava's motion for a new trial on the drug trafficking and firearms counts and remand for proceedings consistent with this opinion. We affirm with respect to Guzman.

## I.    BACKGROUND

When law enforcement officers executed a search warrant at a residence in Kansas City, Missouri, Guzman, De La Cruz Nava, and another person were found locked and hiding in the master bedroom. De La Cruz Nava was around a corner of the room closest to the connecting bathroom, Guzman was under the bed, and a third person was hiding behind a dresser. Other persons were present in the kitchen as

well as outside the house, which was dirty, held few furnishings, and contained contraband.

During the search, officers found a box in the living room containing two rifles, a handgun, a rifle magazine, and a high-capacity pistol magazine. A small quantity of methamphetamine was laying on the sofa. In the kitchen, officers found a purse containing a gun, a drug ledger, a pouch of ammunition, and plastic baggies. Officers recovered a bowl containing methamphetamine and digital scales in a kitchen cabinet. In the master bedroom, law enforcement seized a handgun, a bag with methamphetamine, and a round of ammunition. On a nightstand, officers observed a glass pipe. A separate baggie of methamphetamine or cocaine was also found in the room. Officers seized $313 in cash that was located on the floor as well as $688 in a purse. A bag containing methamphetamine was recovered from the toilet bowl in a connecting bathroom. More ammunition and drugs were found elsewhere in the house. In total, police seized 719.9 grams of methamphetamine.

De La Cruz Nava, who claimed to be on the premises as a cleaning person, spoke with law enforcement and told them she lived at a residence belonging to Guzman. When the officer mentioned that drugs and guns were all over the house, De La Cruz Nava responded, "They all used drugs."

Among others, Guzman and De La Cruz Nava were charged with conspiracy to distribute methamphetamine, conspiracy to commit money laundering, and possession of firearms in furtherance of a drug trafficking crime. The district court entered a scheduling order that required any defendant intending to raise an alibi defense to serve notice on the government on or before February 7, 2019. Guzman never gave notice of an alibi defense until October 24, 2021, explaining he had learned within the prior week that cooperating witnesses would claim one or more of them had bought methamphetamine from him in late 2016 and early 2017. Guzman asserted alibi witnesses would confirm that he was in Mexico during all of 2016 and left in May of 2017. Guzman sought permission to present the witnesses

-3-

using Zoom because of COVID-related travel restrictions from Mexico to the United States and other travel-related concerns. The district court denied his motion.

Aside from law enforcement testimony, the government called nine cooperating witnesses ("CWs") to testify. CW1 testified that Guzman sold or fronted him methamphetamine for use and sale beginning in November 2016. By the time of the search, CW1 owed Guzman about $100,000. CW1 testified that he only saw De La Cruz Nava on the day they were arrested and "once or twice, a few times" before at a different house that Guzman used to deal drugs. CW2 testified that she was a drug dealer who had met Guzman twice. On one occasion, she, CW1, and Guzman went into a bedroom to smoke methamphetamine. De La Cruz Nava stayed in the living room where a television displayed real-time security camera footage. CW3 testified that Guzman paid him to store small quantities of methamphetamine. CW4 testified that he bought methamphetamine from Guzman at least weekly between April or May 2018 until CW4's arrest in August 2018.

CW5 testified that he sold methamphetamine after Guzman sold it to him and CW4. CW6 testified that he initially sold methamphetamine for a person connected to Guzman but later purchased methamphetamine directly from Guzman. CW7 admitted to repeatedly purchasing a pound of methamphetamine from someone he believed worked for Guzman and eventually repeatedly bought methamphetamine from Guzman. CW7 spent the profits from his dealing by purchasing $250,000 worth of cars.

CW8 testified that, soon after meeting Guzman in 2011, she began buying methamphetamine from him, using some and selling the rest. After Guzman was deported in 2012, he contacted CW8 to help him get back into the United States by selling drugs. After Guzman returned to the United States CW8 once again bought drugs from him. CW8 further testified that she introduced CW9 to Guzman and that CW9 traded guns to Guzman in exchange for methamphetamine. When CW8 was asked if she had ever seen Guzman with a firearm, she stated that he had guns the entire time she knew him and volunteered that one time he pointed a gun at her head.

-4-

The court overruled a subsequent objection and denied a motion to strike. Lastly, CW9 testified that Guzman had fronted him three pounds of methamphetamine.

At the close of evidence, the district court denied De La Cruz Nava's motion for acquittal. After the verdict, De La Cruz Nava unsuccessfully renewed her motion for acquittal. De La Cruz Nava's and Guzman's motions for a new trial were also denied. With regard to De La Cruz Nava's motions, the court recounted seven details that it identified as supporting the convictions: (1) when law enforcement encountered De La Cruz Nava, she was barricaded in a bedroom with Guzman; (2) in the attached bathroom officers recovered methamphetamine, which appeared to have been unsuccessfully flushed down the toilet; (3) a knife was recovered from a "purse" on the counter with De La Cruz Nava being the only female arrested in the residence; (4) methamphetamine was found on the counter next to the purse; (5) drug paraphernalia was scattered throughout the house; (6) the expert testimony admitted as to the varying roles of individuals involved in a drug conspiracy; and (7) the testimony from two witnesses who had seen De La Cruz Nava at the residence on other occasions, including in the living room where the security system cameras displayed on a television screen. Without any further analysis, the court denied De La Cruz Nava's Rule 29 motion for judgment of acquittal as well as her Rule 33 motion for a new trial because "sufficient evidence" was presented such that there was not a miscarriage of justice.

Guzman was sentenced to a total term of 320 months' imprisonment on the three counts and ordered to pay a $954,000 forfeiture. De La Cruz Nava was sentenced to a total term of 180 months' imprisonment on the three counts and to pay a $15,000 forfeiture. At sentencing, the court acknowledged De La Cruz Nava's argument regarding her culpability being different from Guzman's and the "harsh" sentence it was imposing. The court stated that it was leaving the issue of sufficiency of the evidence to the appellate court to determine whether the jury, "based upon all the evidence and the way this matter was charged, made the right decision."

## II.    DISCUSSION

### 1.    *Sufficiency of the Evidence for De La Cruz Nava's Convictions*

We review a claim of insufficiency of the evidence *de novo* while viewing the evidence in a light most favorable to the verdict. United States v. Gross, 23 F.4th 1048, 1052 (8th Cir. 2022). A reversal is appropriate only where no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. We uphold a jury verdict if there is at least one theory supported by the evidence that could allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. United States v. Hamilton, 929 F.3d 943, 945 (8th Cir. 2019). This is true even if the conviction rests entirely on circumstantial evidence. Id.

De La Cruz Nava argues that the evidence is insufficient to support her convictions because it only establishes that she was present at the same location where co-defendants were arrested and where drugs, guns, and money were found. She contends the evidence failed to establish her knowledge of the conspiracy and instead demonstrated she was at various places at the direction of Guzman to assist with cleaning, cooking, and childcare. She argues no contraband was seized from her person and no witness testified that she possessed or distributed drugs, or that she handled or was aware of the seized guns or ammunition.

The government counters that the evidence is sufficient for a jury to conclude beyond a reasonable doubt that De La Cruz Nava was a participant in the conspiracy because drugs and guns were found throughout the house, she was found locked in a bedroom with persons who were hiding, she was closest to the toilet where someone had apparently unsuccessfully attempted to flush evidence, and, as the only woman in the house, the purse containing plastic baggies, a drug ledger, a gun, and ammunition was likely connected to her. The government also claims that De La Cruz Nava's claim of employment as a housekeeper/nanny was undermined by the condition of the house and the lack of children on the premises.

-6-

The offense of conspiracy to distribute drugs has three elements: (1) the existence of a conspiracy—that is, an agreement to distribute drugs; (2) the defendant knew of the conspiracy; and (3) the defendant intentionally joined the conspiracy. United States v. Sainz Navarrete, 955 F.3d 713, 718-19 (8th Cir. 2020). It is virtually indisputable that the first two elements were established given the testimony of the witnesses, the seizure of drugs, guns, ammunition, plastic baggies, digital scales, and a drug ledger. The third element is more problematic. While our precedent recognizes that proof a defendant joined a conspiracy may be shown entirely through circumstantial evidence, see United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007), we have held that mere association or acquaintance with a drug dealer and mere presence at the location of the crime are insufficient to establish guilt on a conspiracy charge. See United States v. Cruz, 285 F.3d 692, 701 (8th Cir. 2002). Furthermore, "we will not lightly impute constructive possession of drugs or other contraband to one found in another's house." Id. at 699.

Applying those principles here, De La Cruz Nava did not admit involvement in the conspiracy, there is no evidence in the record that she was ever in physical possession of either methamphetamine or drug proceeds, and no co-defendant, cooperating or other witness testified that De La Cruz Nava was involved in drug activity. We are also unable to find evidence that she acted as a courier, facilitated any drug activity, directed any of the conspiracy's activities, or acted in any manner to advance the illegal end of the conspiracy. The government argues that because De La Cruz Nava was the only woman in the house, a reasonable jury could infer that the bag in the kitchen was a purse and belonged to her. But nothing in the bag demonstrates or even suggests that it was a purse that belonged to a woman. There is no ornamentation on the bag. There were no feminine personal items in the bag. There was no identifying information tying it to De La Cruz Nava. The nondescript, plain bag contained only drug trafficking-related items and is just the sort of storage container that a drug trafficker might use to conceal items without calling attention to himself or herself.

As to the government's other claim that the condition of the house and nonexistent children undermined De La Cruz Nava's defense theory, a messy house and an absence of children do not support an inference that De La Cruz Nava intentionally joined a drug trafficking or money laundering conspiracy. More problematic, the government's argument on this point relies entirely on statements taken from the presentence investigation report, not the trial record. There appears to be no evidence before the jury regarding De La Cruz Nava's representations. What was before the jury and in the trial record is that: (1) De La Cruz Nava was found by law enforcement in a locked bedroom, perhaps hiding or attempting to do so, and there was an attached bathroom where methamphetamine was recovered; (2) she had been in the United States for only a short time before she got arrested; (3) while firearms, methamphetamine, and drug paraphernalia were scattered throughout the house, no one ever saw De La Cruz Nava using drugs or engaging in drug trafficking activity; (4) one witness saw De La Cruz Nava once in the living room where a television was set to display the security camera footage; and (5) the "purse", which from the photographs depict a gender-neutral satchel could have belonged to anyone inside the house or another co-conspirator that left it behind. While evidence in the record of De La Cruz Nava's knowledge of and participation in a drug trafficking conspiracy is scant, it is a high burden to overturn a jury's verdict. We cannot say on this record, although a close call, that no reasonable jury could have found her guilty beyond a reasonable doubt.

Turning to De La Cruz Nava's claim that the district court abused its discretion when it denied her motion for a new trial, a district court may grant a new trial for insufficiency of the evidence "if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." United States v. Harriman, 970 F.3d 1048, 1058 (8th Cir. 2023). When considering a motion under Rule 33, the district court is to weigh the evidence anew, is permitted to disbelieve witnesses, and may grant a new trial even if there is substantial evidence to sustain the verdict. United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). We have noted that a district court's discretion under Rule 33 is broader than it is when considering a motion for acquittal under Rule 29. Id. Unlike a motion for judgment of acquittal,

the district court need not view the evidence in the light most favorable to the government. See United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980) (stating the issues in a motion for a new trial are "far different from those raised by a motion for judgment of acquittal[,]" as the question before the court is not whether a "defendant should be acquitted outright, but only whether he should have a new trial").

Here, in the introductory paragraphs of its order, the district court recited the correct standard for a motion brought under Rule 33; however, it conducted no analysis specific to De La Cruz Nava's new trial motion. It disposed of the motion with one sentence: "Similarly, the Court denies the motion for new trial pursuant to Rule 33 because sufficient evidence was presented against Defendant De La Cruz-Nava such that there was not a miscarriage of justice in the jury finding her guilty of Counts 1-3." There is no indication that the court weighed the evidence anew. Likewise, we are unable to determine whether the district court disbelieved any of the witnesses. Given the lack of any analysis, we are unable to discern whether the district court incorrectly applied the standard applicable under Rule 29 to the new trial request or whether it applied the proper, broader standard applicable under Rule 33. In short, we are unable to determine whether the district court abused its discretion by not considering a matter than should have been given significant weight or by giving significant weight to something improper or irrelevant, or if it committed a clear error of judgment. United States v. Bass, 478 F.3d 948, 951 (8th Cir. 2007). We remand to the district court for consideration of De La Cruz Nava's motion for a new trial as it relates to the drug trafficking conspiracy and related firearms count.

As to the remaining count—the money laundering conspiracy conviction— even assuming the government has demonstrated that De La Cruz Nava joined a drug trafficking conspiracy, there is no evidence that she acted in a manner to conceal the nature, source, location, ownership, or control of the conspiracy's proceeds. See United States v. Anwar, 880 F.3d 958, 968 (8th Cir. 2018) (listing the four elements of money laundering, which includes, in relevant part, a financial

transaction involving proceeds of illegal activity that is conducted, or attempted, with knowledge that "the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity"). After careful review of the record, the government has not met its burden of proving De La Cruz Nava made any efforts, or knowingly participated in a conspiracy, to disguise drug proceeds. We vacate the money laundering conspiracy conviction because no reasonable jury could have found her guilty of this offense beyond a reasonable doubt.

### 2. *Evidentiary Questions in Guzman's Proceedings*

We turn to Guzman's claims related to the denial of his request to present witnesses by Zoom and the admission of his prior gun-related activity. We review evidentiary rulings for abuse of discretion and reverse only if evidentiary rulings constitute a clear and prejudicial abuse of discretion. United States v. Never Misses A Shot, 781 F.3d 1017, 1027 (8th Cir. 2015).

Importantly, the witnesses in question were not excluded. The district court ruled that they could not appear via Zoom. There are obvious issues with allowing a witness to testify over Zoom and these problems are amplified by the location of the witnesses in a foreign country. While the parties dispute whether or not the witnesses could travel to the United States to testify, by the time of trial the record shows that it was possible for witnesses to appear in the United States. To the extent any additional time might have been needed to secure the witnesses' presence, Guzman never sought a continuance, attempted to arrange the witnesses' in-court attendance, nor informed the court of what it might do to promote the attendance of the witnesses. The district court did not err in refusing to allow Guzman's alibi witnesses to testify over Zoom. See United States v. Ali, 47 F.4th 691, 697 (8th Cir. 2022) (recognizing the district court's broad discretion to conduct a trial in an orderly and efficient manner and to choose among reasonable evidentiary alternatives).

Moreover, Guzman has failed to establish prejudice. Even if the witnesses testified in a manner consistent with Guzman's representations, the alibi evidence was at most only a partial alibi. Guzman claims that he was in Mexico from 2016 into 2017, but even if this was established, the evidence of events occurring while Guzman was indisputably in the United States is sufficient to support Guzman's convictions on all counts.

As to Guzman's other asserted evidentiary challenge, while Guzman claims that evidence regarding the unrelated assault with a firearm should not have been admitted under Rule 404(b) of the Federal Rules of Evidence, his objection at trial was non-specific, claiming only that the evidence was irrelevant and prejudicial. The evidence was introduced to establish that Guzman had knowledge of firearms and intent to use them. The evidence involved an incident that occurred eight years earlier, so the relevance may be somewhat diminished by its age. But the use of the firearm does tend to show that Guzman had knowledge of firearms and that he had an intent to use firearms to his personal advantage. Our most relevant inquiry is whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. See United States v. Drew, 9 F.4th 718, 723 (8th Cir. 2021) (noting evidence is properly admitted under Rule 404(b) if it is relevant to a material issue, similar in kind and not overly remote in time, is supported by sufficient evidence, and its potential prejudice does not substantially outweigh its probative value). After reviewing the record, we see no abuse of discretion or plain error in the receipt of the testimony. More importantly, even if this were not the case, the evidence of Guzman's guilt is overwhelming and any error that may have occurred is harmless.[1] See United States v. Adams, 783 F.3d 1145, 1149 (8th Cir. 2015) (stating evidentiary error is subject to harmless error analysis, which requires a

---

[1]Guzman raised for the first time in his reply brief that the United States failed to provide an appropriate notice under Rule 404(b). At no time has Guzman explained his failure to raise this objection at trial or on appeal prior to the reply brief. We will not consider issues raised for the first time in a reply brief unless the appellant provides a reason for failing to raise the issue in the opening brief. Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008).

showing that the substantial rights of the defendant were affected and the error influenced the verdict).

## III.   CONCLUSION

We affirm in part and reverse in part the district court's order denying De La Cruz Nava's motion for judgment of acquittal, vacate De La Cruz Nava's conviction for conspiracy to commit money laundering, and direct the Clerk to enter judgment on this count in favor of De La Cruz Nava.  We reverse the district court's order denying a motion for a new trial on the remaining counts against De La Cruz Nava and remand to the district court for proceedings consistent with this opinion.  As to Guzman, the judgment of the district court is affirmed.

_____