# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2875
_____

United States of America

*Plaintiff - Appellant*

v.

Gabriel Eduardo Lemoine

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 15, 2024
Filed: June 13, 2024
_____

Before COLLOTON, Chief Judge, ERICKSON and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

After a jury found Gabriel Eduardo Lemoine guilty of three drug offenses, he renewed his motion for judgment of acquittal, and alternatively for a new trial. The district court granted his motion for judgment of acquittal and conditionally granted a new trial if its order of acquittal is overturned on appeal. We reverse the district court's judgment of acquittal and affirm the order for a new trial.

## I.  BACKGROUND

While living in Detroit, Michigan, Lemoine met co-defendant, Manuel Martinez.  Martinez subsequently moved to Mexico for a number of years, returning to live in Minnesota in the summer of 2021.  In late January 2022, Lemoine left Detroit and moved into an apartment in Woodbury, Minnesota, with Martinez and one of Martinez's friends.  Lemoine testified that Martinez suggested they start a cleaning business together in Minnesota.

On January 31, 2022, Lemoine and Martinez went to a storage unit in Lake Elmo, Minnesota.  Lemoine testified that they planned to use the shared storage unit for cleaning supplies and tools and also as a place for the other roommate, who was in the process of moving out, to store furniture.  Lemoine completed the rental agreement using his name and Detroit address.  When it was time to pay the rental fee, Lemoine turned to Martinez and Martinez then paid cash for the rent.

In February 2022, Lemoine rented his own apartment in Burnsville, Minnesota.  The apartment was leased in Lemoine's name, but Martinez paid the rent.  Lemoine indicated that he and Martinez eventually planned to move into the Burnsville apartment.  Lemoine rented an additional storage unit in Woodbury, Minnesota, for the purpose of storing a vehicle that Martinez had given him but had broken down.

Around this same time, a confidential informant provided information to law enforcement regarding the distribution of methamphetamine, cocaine, and marijuana in and around St. Paul, Minnesota.  The confidential informant eventually called Martinez and arranged a meeting at a café.  When Martinez arrived at the scheduled meeting, he was driving and Lemoine was a passenger in the car.  Martinez entered the café to speak to the informant while Lemoine remained in the car.

The following day, March 3, 2022, the confidential informant arranged a controlled buy with Martinez.  Shortly before the controlled buy, Lemoine's access

code was used to access the Lake Elmo storage facility. Martinez parked next to the informant's car, got out, and sat in the informant's car. During this time, Lemoine remained in Martinez's car alone. The informant wore a wire that recorded the conversation with Martinez for the sale of a pound of methamphetamine. Martinez told the informant that he had just retrieved enough drugs from the storage unit to make another sale without having to return to the storage unit.

Following the controlled buy, law enforcement executed search warrants on both apartments, both storage units, and the car often driven by Martinez. In the Woodbury apartment, officers seized two pounds of methamphetamine from a kitchen cabinet. In Martinez's bedroom, officers recovered just over $40,000 in cash, ledger sheets, 25 cell phones, and records for bank deposits and wire transfers. In Lemoine's bedroom of that apartment, officers found a car title in Lemoine's name. At the Burnsville apartment, which was mostly unfurnished, officers seized two cell phones. At the Lake Elmo storage unit, law enforcement seized two Target shopping bags containing 90 pounds of methamphetamine. Officers also seized 11 kilograms of cocaine wrapped in tin foil and packed like bricks from the trunk of the car stored at the Woodbury storage unit.

Lemoine and Martinez were indicted and charged with conspiracy to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2.

Lemoine testified at trial that he was unaware of Martinez's illegal activity. He explained that the two of them rented a second apartment because they planned to move to Burnsville and live together. According to Lemoine, they were slow to move in because the key initially did not work. Lemoine explained to the jury that

the apartment lacked furnishings because Lemoine could not afford to move his furniture from Michigan.

The storage facility manager testified that, between February and April of 2022, she saw Lemoine at the Lake Elmo facility 15 to 20 times, sometimes wearing a high-visibility work vest. Other than January 31 and April 15, the manager could not recall specific dates that she observed Lemoine at the unit. The company's keypad access records showed that during this same timeframe, Lemoine's access code was used 28 times to access the unit. From March 16, 2022, through April 9, 2022, Lemoine's access code was used to enter the Woodbury storage facility on eight occasions. The records do not show whether it was Lemoine or others who used the access code.

Lemoine denied any knowledge of drugs at either storage unit, and insisted he never looked in any of the bags. He maintained there were multiple copies of the units' keys and two other people had access to both storage units. Records establish that approximately 30 minutes before the controlled buy, Lemoine's access code was used to enter the Lake Elmo storage unit where methamphetamine was later seized; however, no evidence was offered as to who actually used the code and entered the storage unit that time.

At the close of the government's case, Lemoine moved for a judgment of acquittal on all charges. The district court granted the motion as to the conspiracy charge, finding the government failed to prove that Lemoine: (1) was aware of Martinez's or other conspirators' involvement in drug trafficking; (2) consented to or collaborated with anyone to possess methamphetamine or cocaine with an intent to distribute; or (3) was party to any agreement or understanding regarding the sale of methamphetamine to the confidential informant. The district court described the government's circumstantial evidence presented to the jury as raising "only conjecture rather than providing concrete evidence from which it can be reasonably inferred that Defendant Lemoine was involved in a criminal conspiracy."

In contrast, after drawing all reasonable inferences in favor of the government and without weighing the evidence, the court "narrowly" rejected Lemoine's motion for acquittal on the remaining aiding and abetting counts. The jury found Lemoine guilty on three of the four counts—acquitting him on the charge of aiding and abetting possession with intent to distribute the methamphetamine seized from the kitchen cabinet in the Woodbury apartment.

After the jury returned its verdict, Lemoine renewed his motion for judgment of acquittal, and he moved for a new trial. The court entered a judgment of acquittal, finding no direct evidence that Lemoine knowingly acted with the purpose of aiding Martinez or any other member of the alleged conspiracy to possess methamphetamine or cocaine, or sell or distribute the narcotics to anyone. The court further found that the circumstantial evidence was insufficient because, taken together, the evidence, at best, raised suspicion and required compound speculation. In light of the paucity of evidence to sustain the convictions, the district court found that a miscarriage of justice would occur if an appellate court overturned its acquittal order and the jury's verdicts were allowed to stand.

## II.    ANALYSIS

We review a district court's grant of a motion for judgment of acquittal *de novo*. United States v. Helder, 452 F.3d 751, 753 (8th Cir. 2006). We review the record in a light most favorable to the government, resolve all evidentiary conflicts in the government's favor, and accept all reasonable inferences that support the jury's verdict. United States v. Benton, 890 F.3d 697, 708 (8th Cir. 2018).

A district court has "very limited latitude" when considering motions for acquittal. United States v. Thompson, 285 F.3d 731, 733 (8th Cir. 2002) (quoting United States v. Robbins, 21 F.3d 297, 298-99 (8th Cir. 1994)). The district court is not allowed to reweigh the evidence or assess the credibility of witnesses. United States v. Hernandez, 301 F.3d 886, 889 (8th Cir. 2002). "This standard applies even when the conviction rests entirely on circumstantial evidence." United States v.

Tillman, 765 F.3d 831, 833 (8th Cir. 2014) (quoting United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010)). "This standard is very strict and a jury's verdict should not be overturned lightly." United States v. Boesen, 491 F.3d 852, 855 (8th Cir. 2007) (internal quotation omitted). Further, our law establishes that the existence of a split verdict is significant because it indicates that "the jury carefully performed its duty by not simply rendering a blanket verdict on all counts." United States v. Fazio, 487 F.3d 646, 656 (8th Cir. 2007).

### a. Renewed Motion for Judgment of Acquittal

With regard to aiding and abetting the distribution of methamphetamine (the controlled buy), Special Agent Jacob Henkemeyer testified that drug traffickers often utilize "lookouts" who remain in the car keeping watch while a drug sale occurs. While Lemoine denied any knowledge of the drug trafficking and there was no evidence that Lemoine had any direct contact with the confidential informant, he travelled with Martinez twice to meet with the confidential informant, and his access code for the storage unit was utilized 30 minutes before the sale of one pound of methamphetamine. The jury heard other testimony describing Lemoine's actions over the course of several months and made inferences regarding his knowledge. Further, the agent explained to the jury that wearing a high-visibility vest at the time of the controlled purchase could have been for the purpose of creating a ruse. The jury heard conflicting testimony, reviewed the circumstantial evidence, and made a credibility determination in finding Lemoine guilty.

There is a temptation to devalue circumstantial evidence, but we have long held that courts must treat circumstantial evidence no differently than direct evidence. Lenza v. Wyrick, 665 F.2d 804, 812 (8th Cir. 1981). And a jury may convict based on circumstantial evidence. See United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006) (noting that because direct evidence of a defendant's mental state is often unavailable, the jury is permitted to scrutinize and make reasonable inferences from a defendant's conduct as well as the facts and circumstances pertaining to the incident). So long as "there is at least one theory supported by the

evidence that could allow a reasonable jury to find the defendant guilty beyond a reasonable doubt," we will uphold the jury's verdict. United States v. De La Cruz Nava, 80 F.4th 883, 887 (8th Cir. 2023), cert. denied sub nom. Guzman v. United States, 144 S. Ct. 711 (2024). In acquitting Lemoine despite the verdict, the district court erred by impermissibly reweighing the evidence and giving Lemoine's testimony more weight than the inferences and evidence supporting the jury's verdict.

Regarding the other two counts—aiding and abetting possession with intent to distribute the methamphetamine and cocaine recovered from the storage units— "[p]roof of actual or constructive possession of the contraband is sufficient to sustain a conviction under 21 U.S.C. § 841(a)(1)." United States v. Wright, 739 F.3d 1160, 1168 (8th Cir. 2014). "[T]o prove constructive possession, the government must establish some nexus between a defendant and the contraband; mere physical proximity to the contraband is insufficient." United States v. Williams, 39 F.4th 1034, 1045 (8th Cir. 2022) (internal quotation omitted). "Evidence showing a person has dominion over the premises in which the contraband is concealed establishes constructive possession." Wright, 739 F.3d at 1168 (internal quotation omitted).

Sufficient evidence was presented to the jury demonstrating that Lemoine had dominion over the Lake Elmo storage unit. He rented the unit, the facility manager observed him at the storage facility multiple times over the course of a couple months, and his access code was used to enter the facility 28 times. There was ample evidence for a jury to find Lemoine had constructive possession of the methamphetamine located in the storage unit.

As to the cocaine located in the trunk of Lemoine's car at the Woodbury storage unit, Lemoine admitted at trial that he acquired the car once he moved to Minnesota, drove it for a few days, and then parked it in his unit. "[A] defendant's control and dominion over a vehicle can indicate knowledge of its contents." United States v. Wilson, 619 F.3d 787, 796 (8th Cir. 2010) (internal quotation omitted).

Here, unlike in Wilson, where the Court found constructive possession lacking when there was no evidence the defendant had access to drugs inside a locked safe inside a locked car because the defendant could not unlock either the safe or the car, Lemoine had access both to the storage unit and the car's trunk. While Lemoine claimed multiple people knew the access code for the storage units, this factor alone does not defeat a finding of constructive possession because constructive possession can be joint. See United States v. Blakey, 449 F.3d 866, 869 (8th Cir. 2006) (stating "[p]ossession need not be exclusive, but can be shared").

The district court, relying on United States v. Hernandez, 301 F.3d 886 (8th Cir. 2002), found the link between the evidence and Lemoine's actions was too attenuated. In Hernandez, however, the defendant did not testify, and no drugs were found on her property. 301 F.3d at 891. Here, 90 pounds of methamphetamine and 11 kilograms of cocaine were found by law enforcement in storage units rented and accessed by Lemoine. The jury was tasked with assessing competing testimony and explanations for Lemoine's behavior. When the evidence is viewed in a light most favorable to the verdict and the jury's credibility determinations are accepted, the district court erred in overturning the jury's verdicts.

### b. Motion for New Trial

Our review of the alternative new trial motion is different. We review a district court's decision to grant a motion for a new trial for abuse of discretion. United States v. Amaya, 731 F.3d 761, 764 (8th Cir. 2013). When making a new trial determination, the district court has much broader discretion and may weigh the evidence, choose to believe or disbelieve witnesses, and may "grant a new trial even where there is substantial evidence to sustain the verdict." Id. (quoting United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002)). Of great importance, the district court is not required to view the evidence in the light most favorable to the government when considering a new trial motion. De La Cruz Nava, 80 F.4th at 889. Instead, the district court is allowed to grant a new trial if it is convinced that "the evidence weighs so heavily against the verdict that a miscarriage of justice may

-8-

have occurred." United States v. Harriman, 970 F.3d 1048, 1058 (8th Cir. 2020) (quoting United States v. Anwar, 880 F.3d 958, 970 (8th Cir. 2018)).  This Court will affirm a district court's decision to grant a new trial "absent a clear and manifest abuse of discretion."  United States v. Jiminez-Perez, 238 F.3d 970, 974 (8th Cir. 2001).

Here, the district court granted Lemoine's motion for new trial based on the same evidence sufficiency concerns that supported its grant of acquittal.  As we review the district court's reasoning, we do not find that it clearly or manifestly abused its discretion.  In the reweighing process, the district court found that the facts showing Lemoine's knowledge and involvement in the drug distribution were such that a miscarriage of justice may have occurred.  We will not supplant our judgment for that of the district court.

## III.   CONCLUSION

We reverse the district court's judgment of acquittal, affirm the district court's grant of a new trial, and remand for further proceedings.

_____