# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3449

_____

United States of America

*Plaintiff - Appellee*

v.

Arjune Ahmed

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: September 26, 2024
Filed: October 21, 2024

_____

Before BENTON, ARNOLD, and KOBES, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After a jury found Arjune Ahmed guilty of two counts of kidnapping, *see* 18 U.S.C. § 1201(a)(1), the district court[1] sentenced him to 480 months' imprisonment.

_____

[1]The Honorable Leonard T. Strand, then Chief Judge, now United States District Judge for the Northern District of Iowa.

Ahmed maintains that the court should have held separate trials for the two offenses. He also contends that the court should not have permitted the government to introduce evidence that he committed a similar offense in the past, that the evidence was insufficient to support his convictions, and that the court erred in fixing his sentence. We affirm.

A criminal complaint against Ahmed alleged that a woman, O.B., reported that she had been held against her will and sexually assaulted. According to the complaint, O.B. was leaving a casino in Sioux City, Iowa, one night when she walked close to a car. A man inside the car told her to "come here," and so she walked to him and got into the car. (She testified at trial that he pulled her into the car.) He told her that she was not going home and sped away to South Sioux City, Nebraska. Along the way the man made sexual remarks and exposed his penis. O.B. told him to let her out, and when he refused, she demanded that he take her home. He instead drove down a dirt road, struggled with her, and sexually assaulted her vaginally. He then ordered her out of the car and left. O.B. made her way to a fast-food restaurant and reported that she had been raped.

The complaint went on to say that O.B.'s description of the car led police to Ahmed. He denied attacking O.B. and told them that he did not leave his house on the night in question; however, laboratory testing later revealed that O.B.'s DNA was on Ahmed's penis, and Ahmed's DNA was found in O.B.'s vagina. Surveillance video from outside the casino on the night in question showed a car matching the description O.B. provided.

According to the complaint, Ahmed was involved in another incident about a year later involving a different woman, A.J. She reported that she had been conversing with a man on a dating website when the two agreed to meet for breakfast. The man picked her up and drove her around Sioux City. After A.J. learned how old the man was, she asked him to take her home because she had a daughter his age. He

refused and said "no we are gonna have some fun." He then drove to a park, forced A.J. down a path, and struggled with her. He told her that she was "going to do what I want, we are gonna have some fun or I'm going to kill you." He assaulted her anally and then left the scene. A.J. found a woman in the park and told her that she had been raped. A.J. gave the police information that led them to Ahmed, but he denied meeting up with anyone from the dating website and denied knowing anything about the incident. Ahmed's DNA was found on a condom collected at the scene.

A grand jury indicted Ahmed on two counts of kidnapping, alleging that he "did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away, and hold for ransom, reward, and otherwise (*i.e.*, sexual gratification)" the two women. Ahmed moved to sever the counts into separate trials. He acknowledged that the charged offenses were "of the same or similar character" and so were properly joined in a single indictment. *See* Fed. R. Crim. P. 8(a). But he argued that a single trial for both offenses would prejudice him, *see* Fed. R. Crim. P. 14(a), because of "the risk of a jury unfairly cumulating evidence on multiple counts to arrive at a guilty verdict." He contended that the jury "might infer guilt simply because there are multiple allegations involving multiple alleged victims," especially since the charged offenses were "likely to evoke emotion and arouse anger." The district court disagreed and denied his motion—a decision he now appeals.

We've recognized that defendants facing multiple charges might suffer prejudice warranting separate trials when there's "a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately." *See United States v. Midkiff*, 614 F.3d 431, 440 (8th Cir. 2010). Severance is not warranted, though, when "the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." *See id.* Our cases admonish that "there is a strong presumption against

severing properly joined counts." *See United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010).

We believe severance was not required here because, for reasons we elaborate in what follows, evidence of each kidnapping would have been admissible in a separate trial of the other kidnapping under Federal Rule of Evidence 413. That rule permits the jury to consider evidence showing that the defendant has a propensity to commit sexual assaults. *See United States v. Weber*, 987 F.3d 789, 793 (8th Cir. 2021). We've recognized "a strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *See id.*

Rule 413(a) provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Rule 413(d)(1) explains that a "sexual assault" is a crime involving "any conduct prohibited by 18 U.S.C. chapter 109A." (Chapter 109A, in turn, criminalizes aggravated sexual abuse, sexual abuse, and abusive sexual contact. *See* 18 U.S.C. §§ 2241–2248.) In addition, the term "sexual assault" in Rule 413(d) includes crimes involving "contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus" and "contact, without consent, between the defendant's genitals or anus and any part of another person's body." *See* Fed. R. Evid. 413(d)(2)–(3).

Ahmed insists that because he was "accused of" kidnapping and not "sexual assault," Rule 413 doesn't apply. But we've already rejected the argument that the formal charges in a case govern whether the rule applies to it. *See United States v. Blazek*, 431 F.3d 1104, 1108–09 (8th Cir. 2005). In that case, the defendant was charged with traveling in interstate commerce for the purpose of knowingly engaging in a sexual act with someone at least twelve but younger than sixteen years old. *See* 18 U.S.C. § 2423(b). We held that the district court properly received evidence under Rule 413 about a prior sexual assault the defendant committed because the allegations

surrounding the charged offense involved conduct proscribed by Chapter 109A, even though the defendant wasn't "accused of" a Chapter 109A offense. *See Blazek*, 431 F.3d at 1108–09. We explained that "Rule 413 does not require that the defendant be charged with a chapter 109A offense, only that the instant offense involve conduct proscribed by chapter 109A." *See id.* at 1109. Likewise here, for the rule to apply, Ahmed need not have been charged with any particular offense. What matters is whether the offense he was charged with involved conduct that Rule 413(d) deems to be sexual assault. Ahmed's kidnapping offenses did involve that kind of conduct.

Ahmed maintains that *Blazek* is inapposite because, unlike the § 2423(b) offense that the defendant was charged with there, the kidnapping offenses that Ahmed was charged with do "not include elements matching any of the alternatives listed in Rule 413(d)." For one thing, we aren't sure the charge in *Blazek* includes an element matching a Rule 413(d) alternative either: The § 2423(b) charge there did not say that an actual or even an attempted sexual assault occurred, only that the defendant traveled in interstate commerce for the purpose of knowingly engaging in a sexual act. *See United States v. Vafeades*, 2015 WL 9273936, at *9–10 (D. Utah Dec. 18, 2015). But even if an element of the offense in *Blazek* did match a Rule 413(d) alternative, the case isn't as limited as Ahmed suggests. At no point did *Blazek* rely on the elements of the charged § 2423(b) offense to support its conclusion; instead, the court focused on whether "the instant offense involve[d] conduct" that Rule 413(d) deems to be sexual assault. *See Blazek*, 431 F.3d at 1109. As one of our sister circuits has observed, "[t]he focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a person who has engaged in the covered conduct is likely to engage in it again. Rule 413 uses statutory definitions to designate the covered conduct, but the focus is on the conduct itself rather than how the charges have been drafted." *See United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014). *Blazek* rules this case, and so the district court did not err in denying Ahmed's request for separate trials.

Ahmed raises a related matter regarding the admission of evidence at trial that Ahmed broke into the home of another woman, C.S., and raped her. He asserts that the district court erred in permitting the government to introduce that evidence because Rule 413 does not apply. But for the reasons we've just explained, Rule 413 does apply, and so the evidence that Ahmed committed other sexual assaults, including the one against C.S., was admissible.

According to Ahmed, though, the court should have excluded the evidence about C.S. under Federal Rule of Evidence 403 even if it was admissible under Rule 413. Rule 403 permits the court to exclude relevant evidence when its probative value is substantially outweighed by a danger of unfair prejudice. Ahmed says that the evidence of his sexual assault of C.S. "was not particularly probative" because it occurred four years before the incident with O.B. (and five years before the incident with A.J.) and because it was dissimilar from the charged offenses since it involved a home invasion rather than a kidnapping. We simply disagree with Ahmed that a sexual assault from four or five years earlier carries little to no probative value, and we've permitted evidence of much older offenses to be admitted under Rules 413 and 403. *See, e.g.*, *United States v. Brandon*, 64 F.4th 1009, 1022–23 (8th Cir. 2023). And though Ahmed assaulted C.S. during a home invasion, there are still similarities between that assault and the charged ones that make it probative, including that Ahmed sexually assaulted women older than he was whom he didn't know. *Cf. United States v. Tyndall*, 263 F.3d 848, 849–50 (8th Cir. 2001). Finally, we discern no unfair prejudice here given that Ahmed's propensity to commit sexual assaults is not an improper matter for the jury to consider. *See Brandon*, 64 F.4th at 1023. That's the whole point of Rule 413. There's no error here.

For his next challenge, Ahmed contends that the district court erred in denying his motion for judgment of acquittal on both charges because the evidence was insufficient to support them. We review the denial of a motion for judgment of acquittal de novo, viewing the facts in the light most favorable to the verdict. *See*

*United States v. Blake*, 66 F.4th 1165, 1172 (8th Cir. 2023) (per curiam). We have cautioned that a jury's verdict should not be overturned lightly, and in considering a motion for judgment of acquittal, a court cannot reweigh the evidence or ordinarily assess the credibility of witnesses. *See United States v. Lemoine*, 104 F.4th 679, 684 (8th Cir. 2024).

The government called about forty witnesses to testify in the case, including both O.B. and A.J. They recounted their respective incidents essentially as they appeared in the criminal complaint. For each incident, officers testified that the victims' descriptions of the cars involved led them to Ahmed. In addition, the people whom the victims encountered immediately after the assaults testified that the victims reported being raped and were either crying and upset (O.B.) or disheveled and distressed (A.J.). Witnesses also connected Ahmed's DNA to the incidents, and officers testified that Ahmed lied about meeting the women and having a sexual interaction with them.

As for the kidnapping of O.B., Ahmed says the evidence is insufficient because O.B.'s account that Ahmed forced her into his vehicle is unsupported given that police didn't obtain security footage showing the struggle or interview witnesses who may have seen it. Though video evidence or witnesses might have made the government's case stronger, the evidence the government submitted was more than sufficient to support the conviction. To the extent that Ahmed challenges O.B.'s credibility, courts cannot ordinarily reweigh witness credibility when ruling on a motion for judgment of acquittal, *see Lemoine*, 104 F.4th at 684, and we see nothing about this case that would take it out of the usual rule. Ahmed also emphasizes the testimony of a police officer who spoke to O.B. at the hospital after the incident and was skeptical of her account. But that's merely the view of one witness. The jury was not obliged to share the officer's skepticism.

As for the kidnapping of A.J., Ahmed faults the government for not introducing the messages between Ahmed and A.J on the dating website. He says that those messages might show that they had a consensual sexual encounter. But this is total speculation on Ahmed's part. The evidence already adverted to is sufficient for the jury to find Ahmed guilty beyond a reasonable doubt. The court did not err in denying Ahmed's motion for a judgment of acquittal.

At Ahmed's sentencing hearing, the government introduced evidence that he sexually assaulted four women other than O.B., A.J., and C.S. The court found by a preponderance of the evidence that Ahmed had sexually assaulted two of those women, S.H. and N.G., near the time he assaulted O.B. and A.J. Ahmed contends that the court's consideration of uncharged conduct at sentencing violated his right to a jury trial. But he concedes that the law currently permits courts to consider such conduct, *see United States v. Shield*, 831 F.3d 1079, 1083 (8th Cir. 2016), and that he's merely preserving the error in case the law changes. So there's no merit to this contention.

Finally, Ahmed maintains that the court committed clear error when it found that Ahmed sexually assaulted S.H. and N.G. "A finding is clearly erroneous when it leaves us with a definite and firm conviction that the finding is a mistake." *United States v. Morrow*, 50 F.4th 701, 704 (8th Cir. 2022). With respect to S.H., a 911 operator testified that when he received a call from Ahmed, he heard a woman in the background say he had tried to rape her. A police officer testified that he arrived at the park where the incident occurred, and a woman reported that Ahmed had driven her to the park instead of her home, and she had to break out a car window to get away from him because he was trying to rape her. Ahmed was still at the scene in pain because S.H. had pepper sprayed him. Another officer testified that S.H. told him that Ahmed had shoved her head in his lap and demanded oral sex. Ahmed told police that S.H. had tried to rob him, and he denied trying to rape her.

Ahmed points out that these same officers had previously concluded that the interaction was related to prostitution and did not involve a kidnapping and attempted sexual assault. He notes, too, that a condom at the scene matched ones found in S.H.'s purse (suggesting the encounter was consensual) and that S.H. had no wounds despite reporting that Ahmed struck her with an umbrella.

With respect to N.G., a police officer testified that a distraught woman had called to report being raped after walking home near the same casino where O.B. had encountered Ahmed. She told the officer that she had accepted an offer from Ahmed to drive her home, but he instead drove elsewhere and insisted that they were going to have sex. When she refused, Ahmed pulled her shirt down and put his mouth on her breast. N.G. was able to get out of the car and run away. She gave the officer the license plate number of the car in question, and when officers connected it to Ahmed and showed N.G. a picture of him, she identified him as the culprit. Ahmed contends that the incident with N.G. was merely an encounter with a prostitute, as she later reported to police that she engaged in prostitution to support a drug habit. He also notes that police never arrested him for the incident.

The district court expressly found that Ahmed assaulted or attempted to assault both S.H. and N.G. It bolstered its determination by noting that Ahmed "has a pattern" and that though "there might be some hint of prostitution activity by those victims," that doesn't "prevent them from being victims." As with O.B. and A.J., S.H. and N.G. reported that Ahmed had sexually assaulted them (or attempted to do so). They too were isolated in a car that Ahmed drove and were either taken from the same casino as O.B. or driven to a park as A.J. was. We agree that these episodes fit Ahmed's pattern, and the evidence on this record is manifestly sufficient to support the court's finding. Because we are not left with a definite and firm conviction that the court's findings were a mistake, we reject Ahmed's challenge.

Affirmed.

_____